DAHL, Respondent, vs. HARWOOD, Administratrix,
Appellant.

*December 3, 1952—January 6, 1953.*

2

For the appellant there was a brief by *Cavanagh, Mittelstaed, Sheldon & Heide* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondent there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

CURRIE, J. The following four issues are presented on this appeal:

(1) Was there a cause of action in favor of the estate of decedent, Emily Dahl, which required abatement of the instant action until the two causes of action could be consolidated?

(2) Was there a duplication of negligence in submitting issues of negligence on the part of the defendant James?

(3) Was plaintiff negligent as a matter of law in operating a motor vehicle on the highway during the hours of darkness without a taillight?

(4) Was the combined negligence of plaintiff and his deceased wife, as a matter of law, equal to, or greater than, the negligence of James?

Plaintiff's complaint alleged that the automobile which Mrs. Dahl was pushing at the time of the occurrence of the fatal accident was owned by plaintiff, and plaintiff so testified at his adverse examination. However, at the trial it was brought out that title to the automobile was in the name of Mrs. Dahl and not plaintiff. At the conclusion of the taking of testimony, counsel for defendant moved for dismissal of the action "upon the ground that it appears there is a cause of action on the part of the estate of the decedent and that the plaintiff has no right to maintain the instant action."

Defendant's counsel base their contention, that it was error for the trial court not to have abated plaintiff's action, upon sec. 331.04 (3), Stats. 1949, providing as follows:

"If separate actions are brought for the same wrongful death, they shall be consolidated on motion of any party. Unless such consolidation is so effected that a single judgment within the limits hereinafter provided may be entered protecting the defendant or defendants and so that satisfaction of such judgment shall extinguish all liability for the wrongful death, no action shall be permitted to proceed except that of the personal representative."

Counsel claim that, inasmuch as title to the Dahl automobile was in the name of Mrs. Dahl, her estate has a separate

cause of action for damages to such automobile arising out of the same accident which caused her death, and that the trial court should have abated the instant action until such action for the damages to the automobile could be instituted and consolidated with the present action. There is no claim made that the estate of Mrs. Dahl had any cause of action for pain and suffering as it was stipulated at the pretrial conference that she suffered no conscious pain and suffering between the time of her injury and the time of her death.

There are two reasons why the position of defendant's counsel as to this issue is untenable. In the first place, there is no evidence in the record that the Dahl automobile was damaged in the accident, or that the estate of Mrs. Dahl claims to have a cause of action for damages to such automobile. Secondly, the statute refers to actions *"brought for the same wrongful death,"* and a cause of action for damages to an automobile is not one for wrongful death.

In the case of *Marchant v. Franz* (1951), 259 Wis. 289, 48 N. W. (2d) 620, this court held that where a special verdict permits the jury in an automobile accident case to find the operator of a motor vehicle causally negligent in several separate specified respects and the jury does so find, when actually the operator was causally negligent in only one of such respects, there is a duplication of findings of negligence which renders the comparison of negligence by the jury inaccurate. Counsel for defendant urge that the doctrine of the *Marchant Case* is applicable to the facts of the instant case and that while the jury found that James was causally negligent with respect to lookout, management and control, and speed, the only negligence present was that of lookout, and therefore there was a duplication in the findings of negligence which requires a new trial because of the possible effect such duplication had upon the jury in answering the comparative-negligence question.

The accident occurred late in the afternoon at dusk very close to thirty minutes after sunset. It occurred in the west lane of a three-lane concrete highway zoned for a maximum speed of 50 miles per hour. James testified that when he first saw the Dahl automobile it "seemed like" he was 20 feet away from it, but might have been more. At another point, when testifying as to how far he was when he first saw the Dahl car, he stated:

"I am telling you this,—it seemed like 20 feet; it might have been 50 feet."

The witness Smith, who was driving a truck in a northerly direction approaching the scene of the accident, and who was approximately 800 feet south of the point of the accident when it actually occurred, testified that he had a clear view of the highway for approximately half a mile, and that there was no traffic then moving northerly in his line of vision. In other words, at the time the James car struck Mrs. Dahl, the east two lanes of the highway were entirely open with the nearest approaching vehicle from the south being 800 feet distant. The jury may well have concluded that at a distance of 50 feet, when James first saw the Dahl car, he had sufficient time to avoid the accident if he had immediately turned his car sharply to the left. James did turn his car to the left, but not sufficiently to avoid striking Mrs. Dahl. We are of the opinion that a jury issue was presented as to whether James was a sufficient distance away from the Dahl car when he first saw it to have avoided the accident by immediately turning his car sharply to the left, and that we cannot hold that as a matter of law a distance of 50 feet was too short to permit submitting the issue of management and control to the jury.

With respect to the element of speed, James testified that he was traveling at 45 miles per hour when he first sighted the Dahl car, which was five miles an hour less than the

maximum speed permitted under the speed zone which there applied. His testimony as to such speed of 45 miles per hour stands undisputed in the record. However, his excuse for not having seen the Dahl automobile until he was no more than 50 feet from it, and not having seen Mrs. Dahl at all, even though he had his headlights on, was because a condition of camouflage then existed. It is claimed that this condition of camouflage was caused by reason of the fact that the Dahl car was dark in color, and Mrs. Dahl had on a dark coat and dark slacks, and visibility was poor because of the condition of dusk then prevailing. It is well known that visibility is at its poorest at that time of day, approximately thirty minutes after sundown, and it is logical to assume that the jury may have found James negligent as to speed on the ground that while ordinarily it would not have been negligent to drive on such highway at 45 miles per hour, it was at that particular time of day with visibility conditions poor.

In the case of *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134, it was held that a driver was negligent as to speed who was proceeding on a state trunk highway at a speed less than the maximum legal speed, and who continued at such speed after he knew his vision was being adversely affected by the bright headlights of a vehicle approaching from the opposite direction. While the facts between that case and the instant one are entirely dissimilar, such principle applied in the *Quady Case* is applicable here. We do not hold that James was negligent as a matter of law in driving at dusk at a speed of 45 miles per hour in a 50-mile-per-hour zone, but rather that it presented a jury issue, and the jury having found such driver negligent with respect to speed, we will not disturb such finding. As this condition of negligent speed existed before James sighted the Dahl car, such element of negligence was not duplicated in the jury's finding of negligence as to lookout.

Therefore, it is our conclusion that there was no duplication of findings as to negligence of the defendant James. It would serve no useful purpose to review the various decisions of this court cited in defendant's brief which have held that a duplication of negligence did result from the manner in which the issues of negligence were submitted in those cases, as the facts in the instant case are readily distinguishable therefrom.

Sec. 85.06, Stats., relating to lighting equipment on vehicles, was repealed and then recreated in a very much altered and revised form by ch. 623, Laws of 1949. The pertinent provisions of sec. 85.06, Stats. 1949, are as follows:

"85.06 (1) (q) 'Hours of darkness' are the period of time from one-half hour after sunset to one-half hour before sunrise and all other times when there is not sufficient natural light to render clearly visible any person or vehicle upon a highway at a distance of 500 feet.

"(2) (a) Every vehicle upon a public highway during hours of darkness shall be equipped with the lighting equipment required by this section for vehicles of its class.

"(5) Every motor vehicle, when in use upon, or parked upon or immediately adjacent to, a traveled portion of a highway shall display on the rear a tail lamp so constructed and placed to show a red light from the rear plainly visible from a distance of 500 feet to the rear of such vehicle. . . ."

As noted in the statement of facts preceding this opinion, the trial court submitted the issue of negligence of the plaintiff with respect to having no taillight lit on the Dahl automobile at the time of the accident, in the alternative. First the jury were required to find whether Dahl operated such vehicle without a taillight lighted more than thirty minutes after sunset; and, if the jury answered that subdivision of the question "No," then the jury were asked to find whether plaintiff was negligent in operating the Dahl automobile on the highway before thirty minutes after sunset when there was not sufficient natural light to render clearly visible any

person or vehicle upon the highway at a distance of 500 feet. The jury answered both subdivisions of the question "No."

Counsel do not seriously contend that there was no credible evidence which would support the first of these two findings, which in effect found that the accident did not happen more than thirty minutes after sunset. On November 24, 1950, the date of the accident, the sun set at 4:23 p. m., and thirty minutes thereafter would be 4:53 p. m. The witness Smith, who at the time of the accident was approaching from the south 800 feet distant, drove to the scene of the accident, made some observations as to what had occurred, talked briefly with plaintiff, went to his own truck and got a blanket and spread the same over the body of Mrs. Dahl, and then talked to a neighbor lady, who lived close by and had come to the scene of the accident, and asked her to call the sheriff's office and report the accident, which she did. According to the official records in the sheriff's office, such report of the accident was made at 4:55 p. m. Smith stated that it was three or four minutes after the accident occurred until he talked to such lady and asked her to report the accident. This evidence clearly established that the accident must have happened shortly prior to 4:53 p. m.

However, as a result of the change made by the 1949 legislature in sec. 85.06, Stats., by including the definition of "hours of darkness" embodied in sub. (1) (q) thereof, the Dahl car was required to have a taillight lit at the time of accident even though one-half hour after sunset had not yet elapsed, if there was not sufficient natural light to render clearly visible any person or vehicle upon the highway at a distance of 500 feet. Defendant's counsel strongly urge that the undisputed evidence discloses that at the time of the accident there was not sufficient natural light to render clearly visible a person or vehicle upon the highway at a distance of 500 feet, and therefore subsection (c) of question 5 of the

special verdict should have been answered "Yes" as a matter of law.

There was evidence adduced in behalf of the defendant which would have clearly sustained a "Yes" answer to this subdivision of the verdict so as to find negligence on the part of the plaintiff in not having a taillight lit upon the Dahl vehicle. However, on this appeal we need only consider the credible evidence which tends to sustain the "No" answer made thereto by the jury.

The witness Smith was a driver salesman for a Kenosha fruit concern, and was operating the truck of his employer returning from Waukegan to Kenosha at the time the accident occurred. He testified that as he approached the scene of the accident some of the vehicles he met had headlights on and some did not. He had the headlights of the truck which he was operating turned on low beam, and testified that he could not see any better by reason of the lights being on at low beam than if he had had no lights. At the time of the accident he stated he had a clear view of the highway north for a distance of about a half a mile. However, when the accident actually occurred he testified as to seeing only the lights of the James car as it turned left from the west side of the highway to the east, and not the car itself. It is a matter of common experience that while there may be sufficient daylight at dusk to clearly see an automobile without lights at a distance of 500 feet, when the headlights of such a vehicle are lit, one is able to see only the lights and not the outline of the vehicle.

The plaintiff Melvin A. Dahl testified as to visibility conditions at the time of the accident as follows:

"Q. What was the condition of the lighting at that time you were pushing it on the highway? A. It was clear.

"Q. How far could you see? A. I would say at least a quarter of a mile."

The Dahl automobile proceeded only a distance of 60 feet to 100 feet from the point it was pushed onto the highway to the time the accident occurred. Therefore, the jury were entitled to draw the inference that visibility was practically the same when the accident occurred as it was at the time the Dahl car first entered the highway.

Furthermore, the testimony is undisputed that on the day of the accident the weather was clear so that there was no cloudy, overcast condition which affected visibility. It is a matter of common knowledge, that when weather conditions are clear at the time of year when this accident occurred, visibility sufficient to render clearly visible a person or vehicle on the highway a distance of 500 feet continues until approximately thirty minutes after sunset. The members of a jury are entitled to take into consideration matters of common knowledge. The rule on this point is well stated in 20 Am. Jur., Evidence, p. 55, sec. 28:

"In arriving at a verdict jurors are not permitted to give consideration to facts within their personal knowledge of which evidence has not been produced. They are not, however, restricted entirely to a consideration of facts directly proved. Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life any more than the court is expected to ignore its own knowledge and experience with ordinary affairs. On the contrary, they may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved."

We therefore cannot hold that as a matter of law the answer of the jury to subdivision (c) of question 5 (the subdivision based upon visibility) should have been changed by the trial court from "No" to "Yes."

As to the contention that the combined negligence of plaintiff and his wife equaled or exceeded that of the defendant James as a matter of law, we hold that the issue of comparative negligence in this case was solely for the jury. The recent

decisions in *Quady v. Sickl, supra,* and *Hephner v. Wolf* (1952), 261 Wis. 191, 52 N. W. (2d) 390, clearly indicate the serious weight this court accords to the negligence of the operator of a moving motor vehicle who collides with a stationary object in the highway. The negligence of the defendant James in the instant case is of much the same character as the negligence of Quady and Hephner in those two cases, though the element of camouflage present in the instant case may be sufficient to distinguish it from them,—the latter being a point we do not need to pass upon herein.

*By the Court.*—Judgment affirmed.