Szymon, Appellant, vs. Johnson and another, Respondents.*

*February 8—March 8, 1955.*

* Motion for rehearing denied, with $25 costs, on May 3, 1955.

154

156

For the appellant there was a brief by *Crawford, Crawford & Cirilli* of Superior, and oral argument by *Raymond A. Crawford.*

For the respondents there was a brief by *Hughes, Anderson & Davis* of Superior, and oral argument by *John L. Davis.*

MARTIN, J.    Appellant contends that Johnson was negligent as a matter of law with respect to speed, citing *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134, and other cases, for the reason that he continued to drive 50 miles per hour although his vision was so adversely affected by the lights of the cars coming toward him that he did not see the truck until he was 70 to 90 feet from it.    The cases cited do not apply here.    This court has held speed to be negligent as a matter of law only in cases where the driver's vision has been blinded, dazzled, obscured, or obstructed, and there is no evidence that Johnson was blinded by the lights of the oncoming cars.    He stated that their headlights were dimmed.    It was for the jury to decide whether his speed was negligent in the face of whatever reduction in visibility might have been caused by the lights of the other cars.

Neither can it be held as a matter of law that Johnson's lookout was negligent.    Appellant argues that the lights of the vehicles coming from the south had the effect of illuminating the roadway where the truck was stopped; that Koski's testimony shows there were lights on the truck before the accident; that there were reflectors on the rear of the truck which Johnson failed to see.    Whether the lights coming from the south had the effect of lighting the roadway where the Szymon truck stood was for the jury to consider, particularly in view of Olson's testimony that he, in approaching the intersection from the south, did not see the truck even though

Johnson's lights were beyond it. While Koski did say that he saw dim headlights on the truck as he looked back, the evidence does not show that there were any taillights burning. The trial court instructed the jury regarding sec. 85.06 (16), Stats., requiring head lamps that will reveal objects at least 100 feet ahead. Under all these circumstances it was for the jury to determine whether Johnson should have seen the truck before he did.

Appellant further contends that the evidence was insufficient to raise jury questions as to the negligence of Frank Szymon. Question 3A inquired as to his negligence in leaving the truck standing upon the highway. While the jury answered that question "No," it is our opinion that it should not have been submitted, since the evidence would not have supported a finding to the contrary. Koski definitely stated that he saw Szymon trying to push the truck. Since it is undisputed that the vehicle was entirely in the west lane, leaving a clear and unobstructed width of more than 15 feet on the east side of the roadway, its position on the highway could not have been negligent.

Question 3B inquires as to Szymon's negligence with respect to lights on the rear of the truck. Although we find no exhibits in the record, the transcript of the testimony indicates that a photograph of the truck was introduced in evidence, apparently showing reflectors on the rear. Koski stated he saw headlights burning dimly as he looked back at the truck, but he said the truck was unlighted at the time he passed it. Both Johnson and one of his passengers testified there were no lights on the truck. The evidence presented a jury question in that respect.

Subs. C and D of question 3 inquire as to Szymon's negligence in failing to put out warning flares or use any other device or methods of warning. In the first place, the two questions are duplicitous. But in our opinion no question

on the failure to warn should have been included in the special verdict. There is no evidence from which the jury could infer that Szymon's truck had been stalled long enough for him to employ any method or means of warning traffic. Respondent argues that from Koski's testimony the jury could have reasoned that Szymon had time to do so. We cannot agree. If the Williams car was traveling 40 to 45 miles per hour when it passed the truck and thereafter slowed down to a stop about a block and a half south of it, as Koski testified, no more than ten to twenty seconds could have elapsed until Koski got out of the car and looked back where he saw the Johnson car coming from a distance of 1,800 feet north of the truck. At 50 miles per hour the Johnson car traversed the 1,800 feet in twenty-four seconds. The evidence shows the lapse of about a minute during which the truck was known to be stalled, which would be insufficient to allow Szymon to put out flares or otherwise warn traffic on the highway. It therefore required the jury to speculate in order to find he was negligent in failing to warn.

Question 3E inquiring whether Szymon was negligent as to the position he was standing on the highway was a jury question, although we note from a reading of the record that it is not clear where he was standing. Koski testified that he "could see that that man was trying to push that pickup truck out to the side of the road," "saw the silhouette, he was trying to push the truck aside." It was only the statement of respondents' counsel, in moving for a nonsuit at the close of appellant's testimony, that Szymon was in the "center of the highway on the left side of his truck pushing it." Szymon was found lying in the center of the intersection after the accident, however, and the evidence is sufficient to present the question to the jury.

Sub. F of question 3 on Szymon's lookout should not have been submitted. There was no evidence whatever of his

lookout or lack of it. The jury could only infer negligent lookout from his position on the highway. But, in any event, lookout is immaterial since the negligence which contributed to his injuries would be that of placing himself in a position of danger.

Appellant also contends that the assessment of damages is grossly inadequate. That question will be presented to another jury and it is unnecessary to discuss it.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

The following memorandum was filed May 3, 1955:

PER CURIAM *(on motion for rehearing)*. Nothing in the original opinion is intended as relaxing the rule that objections to the form of the special verdict will be deemed waived on appeal unless counsel has preserved such objections when the verdict is submitted to the jury.

We merely called attention to the fact that certain questions in the special verdict were duplicitous. Any objections on that ground had been waived by failure to object thereto.

A new trial was granted because some of the jury's answers were not supported by the evidence.