ROBINSON, Respondent, vs. BRIGGS TRANSPORTATION COMPANY and another, Appellants.

MOSER and another, Appellants, vs. MOTOR CARGO, INC., Respondent.

*March 5—April 3, 1956.*

450

452

For the appellants there were briefs by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Daniel T. Flaherty.*

For the respondents there was a brief by *Engelhard, Snodgrass & Goerdt* of La Crosse, for Amos Robinson, and *Thompson, Smyth & Flynn* of La Crosse, for Motor Cargo, Inc., and oral argument by *Lawrence M. Engelhard* and *Robert D. Smyth.*

BROWN, J.    Appellant contends that the evidence does not sustain the jury's answers that Moser was causally negligent in respect to lookout or management and control and, in any event, the inclusion of both such questions in the verdict results in a duplication which prejudicially affects the comparison of negligence.    Moser's testimony was that he was paying close attention to the highway before him but, because of insufficient lights on the Robinson trailer and the brilliant light at Ernie's Truck Stop, followed by darkness as the lights were passed, he was unable to see the Robinson trailer until it was only 50 feet ahead of him.    Moser testified that he reacted immediately, first turning to pass on the left, but he saw a light in the left-hand lane, so he turned hard to his right, attempting to go by Robinson on that side, but was unable to do so without colliding.    On the other hand, the witness, Edmonds, sat in his cab in front of Ernie's Truck Stop and saw the accident developing.    As Moser approached the scene but was still 300 feet away, Edmonds first tried to signal with his spotlight that there was an obstruction ahead.    When he saw that Moser paid no attention to this warning he turned the spotlight on the back of the Robinson trailer and testified "When I shined the light on it, it lit up the trailer."    Edmonds also testified that Moser's headlights shone approximately 200 feet ahead of his vehicle and "shined up" the back of this Motor Cargo unit within 100 feet and at Moser's rate of speed Moser had ample time to have turned or stopped when his lights did light Robinson's equipment. There is other evidence from which the jury could have concluded that the lights at Ernie's would reveal the Robinson trailer to an alert driver but it is unnecessary to detail it. Edmonds' testimony is enough, in our judgment, to sustain the jury in determining that Moser's failure to see the trailer until he was only 50 feet from it was due to his negligence in lookout.

The jury found that Moser was also guilty of causal negligence in respect to management and control, and we consider that there is credible evidence in support of this finding. Moser testified that as soon as he saw the Robinson vehicle he turned to go by it on the left but almost immediately changed his mind and his course because he thought he saw a light in the left-hand lane and he didn't want to risk a head-on collision. The left door of Moser's cab collided with the right rear corner of Robinson's trailer. The door came off. Moser fell out and his vehicle ran by Robinson's and off the highway. During this time Edmonds was seated in the cab of his tractor, off the highway, some 200 feet west of the point of collision watching Moser's approaching semitrailer and listening to the sound of Moser's motor. He testified that the motor was pulling hard and was clearly audible. Edmonds was an experienced truck driver and testified that if Moser had "let up on the gas" he would have known it by the sound of the motor but Moser neither let up on the gas nor put on his brakes nor otherwise slowed down until he was within 10 feet of Robinson's trailer. Bearing in mind Moser's testimony that he saw Robinson's vehicle when it was 50 feet distant, we consider that it cannot be determined as a matter of law that to proceed another 40 feet without braking or cutting off his fuel supply was to exercise ordinary care. It appears to us that the evidence presents a jury question on the issue of negligent management and control.

As to the question of whether the negligence so found was causal, the jury might consider that Moser, as his brief asserts, very nearly got by Robinson on the right without a collision after first starting to pass to the left, and it might conclude that, considering Moser's moderate speed, a more prompt selection of the way to pass, a shutting off of power, and the application of brakes would have afforded him sufficient additional time to have cleared the Robinson trailer.

Appellant submits that to have questions in the special verdict both on lookout and on management and control was

error because it results in duplication. He cites *Crawley v. Hill* (1948), 253 Wis. 294, 34 N. W. (2d) 123, and *Marchant v. Franz* (1951), 259 Wis. 289, 48 N. W. (2d) 620. In the former case, in which an automobile struck a pedestrian, the driver did not see the man on foot until it was too late in the exercise of ordinary care to avoid the accident. Our opinion pointed out "This is not a case where after a failure of lookout ceased the defendant in the management of his car was guilty of negligent management and control." (p. 298.) In the *Marchant Case, supra,* where there was a rear-end collision between two automobiles the failure of lookout continued until it was impossible for the following driver to avoid the collision. Consequently, defective lookout alone caused both accidents. In the instant action we consider the evidence permits the conclusions that Moser's inefficient lookout until the last 50 feet impaired but did not extinguish his power to prevent the collision by ordinary care in management and control. He failed in that respect also and hence each dereliction contributed to produce the accident. The questions are close ones but under these circumstances we are unwilling to say that the trial court erred in submitting both lookout and management and control in the special verdict or that the jury's answers lack credible evidence in their support.

It is not disputed that in towing Robinson's semitrailer Vanderlaan was Robinson's agent and any negligence on his part is imputed to Robinson. Highway 12 at the scene of the accident consists of a cement slab 20 feet wide bordered on each side by shoulders some 10 feet wide. The shoulders were frozen and practically clear of snow except for some that had been packed hard by traffic. After entering the highway Vanderlaan first attempted to drive on the right (south) shoulder but he testified that he felt his rear right wheel slipping and feared he would lose traction, so he came back completely onto the south lane of the cement. When he halted

for his conference with Robinson, the two vehicles left a clear roadway of 12 or 12½ feet to their left. Though both Vanderlaan and Robinson had fusees readily available, they did not attempt to place them or other emergency warning lights. Fusees are lighted by friction, like a match, and can be carried in the hand without danger to the holder when lighted. Robinson testified that they could be lighted and displayed within thirty seconds after stopping. Other witnesses estimated shorter times.

Statutes to be considered are:

"85.06 (18) LIGHTING DEVICES FOR STATIONARY VEHICLES. No person shall during hours of darkness permit a truck, tractor, trailer, semitrailer, or bus to stand upon any traveled portion of a highway outside of the corporate limits of any incorporated city or village, unless there is displayed three of any one of the following lighting devices: Burning fusees, burning pot torches, lighted red lanterns. One shall be placed 10 feet to the left rear side of the vehicle, one placed approximately 125 feet to the front, and one placed approximately 125 feet to the rear of the vehicle to clearly indicate the location of such vehicle on the highway. Such lighting devices shall be so displayed during the entire time such vehicle is left standing. Every truck, tractor, or bus operated upon a highway outside of the corporate limits of any incorporated city or village shall carry in a place readily accessible to the driver the lighting device so required. Said lighting devices shall at all times be kept in proper working order, and pot torches or lantern shall be kept filled."

"85.19 PARKING, STOPPING OR STANDING. (1) *Parking on highway.* No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop, or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop, or leave standing any vehicle whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such standing vehicle shall be

left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction along such highway."

"(8) *Disabled vehicles upon highway.* The provisions of this section shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position."

Moser requested the trial court to include in the special verdict questions concerning the possible negligence of Robinson in stopping on the highway when it was practical to stop off the highway; in stopping in such a position that he did not leave a clear and unobstructed width of 15 feet of roadway opposite his vehicle; and in failing to put out the fusees or other lights mentioned in sec. 85.06 (18), Stats. Moser contends that the denial of these requests was prejudicial error which is not cured by question 3 of the special verdict, supra.

We consider these assignments of error are well founded. The statutes mentioned are safety statutes and, if violated, their violation is negligence as a matter of law. Vanderlaan and Robinson testified that it was not practical under the circumstances to go onto the shoulder because of the probable loss of traction. But other witnesses testified that the police car and a telephone repair truck which came to the scene right after the accident used the shoulder without difficulty. It may be presumed that they have less weight than semitrailers but a jury might reasonably conclude that the greater weight would not impair traction to the extent that, with the momentum already attained, the towing and towed units could not have been driven onto the shoulder, or at least far enough to the right to leave a clear passage of 15 feet, before they were brought to a stop. A jury should say if the first alternative was practical or the second possible. We consider that questions concerning the possible negligence in stopping the vehicles where they were should have been submitted as

requested by the appellant. Of course, the questions should be put in the alternative to avoid possible duplication.

Robinson contends that his vehicle was disabled and, by virtue of sec. 85.19 (8), Stats., it is exempt from the requirements of sub. (1). As far as its own motive power is concerned, the semitrailer was disabled, but Vanderlaan's power was available and he was Robinson's agent at the moment. The evidence shows no impossibility of movement, such as that contemplated by sub. (8) to excuse stopping or remaining in the position on the highway which the vehicles occupied. Indeed, when Robinson was asked why he did not put out lights to warn other travelers of his obstruction of the highway, he said that time did not permit; he would be gone from there in less than the time it would take to set out fusees. We do not think he is entitled to call his vehicle disabled to excuse his position on the highway and call it mobile to excuse his failure to set out lights. This dilemma by itself appears to us to demonstrate the necessity of submitting the requested questions, or an equivalent, for jury determination of a possible breach of the safety statute and, consequently, of the existence of negligence.

What the trial court did do was to submit question 3 which, with its answers, was:

"At or immediately prior to the collision in question was Amos Robinson negligent in any of the following respects:
"(a) In having his vehicle towed upon the highway? Answer: No.
"(b) As to lights? Answer: Yes."

By question 4 the jury found that the negligence determined by 3 (b) was causal.

Even with the instructions of the court that, in answering 3 (a) the jury was to take into consideration the possibility that the towing operation might involve stopping on the highway, we do not consider question 3 (a) was an adequate substitute for those properly requested by appellant. More

definite questions and answers dealing with Robinson's possible negligence in his position on the highway just before and at the time of the collision are required.

The court's instructions to the jury respecting question 3 (b) makes it evident that this question refers to the ordinary taillights and clearance lights attached to the vehicle and not to the emergency lights described in sec. 85.06 (18), Stats. Moser contends that the court erred in denying his request to include in the special verdict a question on the possible negligence of Robinson in failing to set out the lights mentioned in sec. 85.06 (18), and erred in its instructions on question 3 (a) that, under the circumstances, Robinson was not required to place such lights. We think his contention is sound. The statute, literally, imposes an absolute duty on the person responsible for a vehicle standing on the traveled portion of the highway in the hours of darkness to place specified warning lights. Such a person may have no time to place them before being struck and in such a case is excused for his failure to get them in position. "In applying that statute the operator of the standing vehicle must, of course, be allowed sufficient time to enable him to place the prescribed fusee or lights." *Bornemann v. Lusha* (1936), 221 Wis. 359, 364, 266 N. W. 789. To the same effect, *Szymon v. Johnson* (1955), 269 Wis. 153, 158, 69 N. W. (2d) 232. In the *Bornemann Case* we held that the operator was negligent as a matter of law when he omitted to place lights until five or six minutes had elapsed after the vehicle stopped and we said that prompt compliance with the statute is essential. Robinson testified that he had no intention of placing lights because of the short time he expected to be stopped. What he proposed to do in giving the shot of ether to the motor would take, he estimated, at least a minute and a half to two minutes. He revised this estimate later, but the conflict in his testimony is ordinarily to be resolved by the jury. Under the circumstances we do not think it can be decided

as a matter of law that sec. 85.06 (18) has no application to this situation, yet that is what the court instructed the jury. And, as we have said, when respondents deal with sec. 85.19 (1) and (8), they insist that Robinson was disabled. It was his plan to tinker with his motor. The jury might well conclude that, before beginning to do so, ordinary care would require him to take precautions for the safety of other users of the highway.

There remains, of course, the element of the time elapsing between the stopping of Robinson's vehicle and the collision. Witnesses whom the jury was entitled to believe and inferences it was entitled to draw from their testimony would place the interval at about three minutes. Others estimated this in terms of seconds. The statute prescribes placing a light 10 feet from the left rear side of the motionless vehicle. Robinson testified that he could have lighted and displayed a fusee within thirty seconds of the time he came to a stop. He said, too, that he stood and watched Moser come for thirty or forty seconds. During this time he made no effort to light a fusee. "I was practically sure he could see me and turn out and there was no cause why he couldn't see me." The jury could consider that it was this reason and not lack of time which accounted for the failure to display lights. Under the circumstances we do not think it can be determined as a matter of law that sec. 85.06 (18), Stats., has no application to this situation. The trial court's instruction to that effect constituted error, and we also consider that a jury question was presented, and the requested question on it should have been asked, whether the failure to place warning lights was causal negligence.

In our view the facts do not justify compliance with Moser's demand for judgment notwithstanding the verdict on the ground that Robinson's negligence was at least equal to his own. But because we consider there was prejudicial error in the court's refusal to submit questions pertaining to

Robinson's position on the highway and his failure to place warning lights, and in its instruction that Robinson was not required by statute to place warning lights, we conclude a new trial is required.

*By the Court.*—Judgments reversed, and causes remanded for a new trial. Appellants' motion for the allowance of the cost of printing their brief in excess of 50 pages is granted.