Roman WROBLEWSKI, Plaintiff-Appellant,

v.

EXCHANGE INSURANCE ASSOCIA-TION OF CHICAGO, n/k/a Exchange Casualty & Surety Company, a foreign insurance corporation, McDowell Truck Line, Inc., a foreign corporation; Ray Swaney and William Cowles, Defendants-Appellees.

No. 12640.

United States Court of Appeals Seventh Circuit.

Dec. 22, 1959.

Herbert Terwilliger, Wausau, Wis., Fred W. Genrich, Jr., Wausau, Wis., for appellant.

Carroll Metzner, Madison, Wis., Richard P. Tinkham, Wausau, Wis., for appellee.

Before DUFFY, PARKINSON[1] and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit to recover damages alleged to have been caused by the negli-

gent operation of a tractor-trailer unit operated by McDowell Truck Line, Inc. (McDowell), one of the defendants. The case was tried to a jury. Under the Wisconsin comparative negligence law, the jury attributed 55% of the causal negligence to the plaintiff and 45% to the defendants. Upon this verdict and under Wisconsin law, the Court entered judgment for the defendants.

On July 12, 1955, at approximately 3:00 a. m., plaintiff was operating a tractor-trailer unit on U. S. Highway 41, a short distance north of the Wisconsin-Illinois state line. Plaintiff was driving this unit in a southerly direction. At this point, Highway 41 is a four-lane highway. The two southbound lanes are each twelve feet wide or a total width of twenty-four feet. There is a white line in the center of the two southbound lanes. The two northbound lanes are separated from the two southbound lanes by a grass plot approximately twenty feet in width.

Plaintiff had been operating on the left or east portion of the southbound lanes for some time prior to the collision as he had passed a number of tractor-trailer units and trucks which also were traveling in a southerly direction. There is a wide shoulder on the west side of the highway. In the area of the collision, the roadway is level and straight. Plaintiff was driving an International tractor ten years old. His load was thirteen tons.

North of the scene of the accident and on the west side of the highway is a large filling station known as Martin's Filling Station. Part of its equipment is long tubular lights mounted on poles which are located near its pumps. At the time of the collision, these lights were lighted. The south driveway of Martin's Filling Station is approximately 1000 feet north of the point of collision.

At a point approximately east of where the collision occurred, and on the east side of the highway, the State of Wiscon-

1. While Judge Parkinson participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion.

sin maintains a truck-weighing station. There are large overhead lights adjacent to this station. These lights were burning at the time of the accident.

After passing the last of the tractor-trailer units or trucks which were traveling in a southerly direction, plaintiff started to pull over to the west of the southbound lanes. When he was straddling the center line and at an angle, he first saw the McDowell trailer moving south and which, according to plaintiff's testimony, was sixty to eighty feet distant. Weather conditions were clear and dry. There was no mud, dust or other foreign substance on the pavement. Plaintiff applied his trailer brakes. Skid marks on the pavement were forty-seven feet in length. The right front fender of plaintiff's tractor struck the left corner of the McDowell trailer. The impact tore off the right saddle tank of plaintiff's unit. The fuel became ignited and plaintiff was very severely burned.

Ray Swaney was driving the McDowell unit that was struck from the rear by the tractor driven by plaintiff. He had driven into the Martin Filling Station for gas. While there he checked the tires. After the unit was serviced, Swaney testified he started the motor on his tractor and turned on the lights including the trailer and clearance lights. He drove on Martin's south driveway and stopped ten feet distant from the highway. He could see his headlights shining across Highway 41. Swaney noted some headlights on the highway to his left which were from ¼ to ½ mile distant. He then pulled on to the highway and claimed that as he drove in a southerly direction he was entirely in his right lane on the westerly side of the highway. He testified positively that he was not straddling the white center line. After proceeding southerly about one thousand feet, and while driving about thirty miles per hour, the McDowell trailer was struck from the rear by the tractor driven by plaintiff.

It was and is plaintiff's claim that the driver of the McDowell trailer unit was negligent because the trailer, just prior to the collision, did not have a lighted red taillight plainly visible 500 feet to the rear of the vehicle. Plaintiff also claims the two red clearance lamps on the trailer were not lighted. In the special verdict, the jury supported plaintiff's contentions in each of these respects, and found such failure was a substantial factor in producing the collision. However, the jury found that the trailer was equipped with two red reflex reflectors mounted on the rear of the trailer in such manner as to be reasonably visible at a distance of from 500 feet to 50 feet from such vehicle, when directly in front of lawful upper head-lamp beams during the hours of darkness under normal atmospheric conditions.

The jury found there was no negligence by Swaney, the driver of the McDowell unit, by reason of the position of that unit on the highway just prior to and at the time and place of the collision.

The jury found the plaintiff negligent in failing to keep a proper lookout, and in failing to keep his tractor-trailer unit under proper management and control. The jury found such negligence by plaintiff was a substantial factor in producing the collision. However, the jury found the plaintiff was not negligent as to speed.

■ Plaintiff argues that under decisions of the Wisconsin Supreme Court, before a person can be negligent as to both lookout and management and control, there must be sufficient time for him not only to see the dangerous condition and make an evaluation thereon, but there must still be sufficient time thereafter to take effective action to avoid the accident.

If the McDowell unit had been at a standstill, a stronger case could be made as to the lack of time for plaintiff to take effective action, but the McDowell unit was moving ahead at a rate of at least thirty miles per hour. Plaintiff testified he was driving at forty miles per hour. On this basis, the McDowell unit and plaintiff's unit would have traveled about 318 feet from the time plaintiff claims he

first saw the McDowell unit and the moment of collision.

■ Plaintiff argues that the question of lookout and the question of management and control should not have both been submitted in the special verdict. But plaintiff did not object to the form of the special verdict, and thereby waived his objection. Kanzenbach v. S. C. Johnson & Sons, Inc., 273 Wis. 621, 79 N.W.2d 249. Of course, plaintiff is not thereby precluded from contending there is no substantial evidence to sustain the jury's finding of negligence as to management and control.

In Robinson v. Briggs Transportation Co., 272 Wis. 448, 76 N.W.2d 294, the plaintiff Robinson was stalled on a highway, and defendant Mosher struck his car from the rear. The jury found defendant Mosher causally negligent both as to lookout and management and control. Defendant contended the questions were duplicitous. Defendant had testified he did not see plaintiff's vehicle until he was fifty feet distant. The Court held there was ample evidence of negligence as to lookout, and further, that since defendant Mosher took no effective action in the last fifty feet before the collision, he likewise could be held negligent as to management and control.

We find no error in the manner in which the issue of plaintiff's negligence was submitted to the jury. We hold further, the findings as to plaintiff's negligence are supported by credible and substantial evidence. Certainly such findings are not clearly erroneous.

■ Plaintiff further argues that as the jury found the McDowell trailer did not comply with Wisconsin law as to properly lighted taillight and clearance lights, McDowell and its driver Swaney must be held to be more than 50% responsible as a matter of law.

The jury found the red reflectors on the trailer were reasonably visible at a distance of from 500 feet to 50 feet from the trailer. It is clear that plaintiff was negligent in some degree. Under Wisconsin law the apportionment of negligence is almost always for the jury.

In Johnson v. Sipe, 263 Wis. 191, 56 N.W.2d 852, plaintiff Johnson was driving his motor scooter on a highway at night. He was struck from the rear by a motor vehicle operated by defendant Sipe. The jury found plaintiff's headlight and taillight were insufficient. He did, however, have a red reflector on the rear of his scooter. The jury found defendant Sipe negligent with respect to lookout, speed and management and control. The jury apportioned 90% of the causal negligence to defendant and 10% to plaintiff. Defendant appealed, claiming plaintiff's negligence should be at least 50% as a matter of law. The Court said (263 Wis. at page 196, 56 N.W.2d at page 855): " * * * The question whether Johnson was causally negligent in that respect was for the jury, and it found him so. It could also reasonably infer from the evidence, however, that even though Johnson may have been negligent in failing to provide the degree of illumination on the scooter which was required by statute, the reflectibility of the tail light glass was such that Sipe should have seen it from a distance of 100 feet or more if he had maintained a proper lookout."

Further, 263 Wis. on page 197, 56 N.W.2d on page 855: "It was strictly within the province of the jury to determine the extent to which Sipe's failure to see the scooter was caused by Johnson's lack of proper illumination, * * * We have consistently held that on evidence of this kind and particularly where the negligence of the parties differs in kind and quality, the comparison is for the jury."

We hold that in the case at bar the apportionment of negligence was a matter for the jury and must stand. Under the comparative negligence statute (Sec. 331.045, Wis.Stats.) judgment was properly entered for defendants on the verdict of the jury.

We next consider alleged errors which plaintiff contends entitle him to a new trial. Plaintiff insists the Court erred in not permitting plaintiff's counsel to read from Attorney Metzner's letter re-

**162**

ferring to paper signs alleged to have been on the McDowell tractor. We have considered carefully plaintiff's argument, but hold there was no error in refusing permission to read a portion of the letter as a part of counsel's rebuttal argument to the jury.

[6] Plaintiff insists that it was prejudicial error for the Court to permit William Cowles to testify for the defendant. On December 10, 1958, the Court entered an order requiring plaintiff and defendants to give the names and addresses of prospective witnesses. Cowles' name was not furnished. The order was limited to those claiming to have knowledge of facts existing or occurring within five miles north of the scene of the accident. William Cowles was the owner of the tractor involved in the collision. He was a party defendant. Interrogatories were submitted by plaintiff for answer to William Cowles. We think there was no abuse of discretion on the part of the Court in permitting Cowles to testify. · In fact, the trial court commented that neither side had lived up strictly to his order as to naming witnesses.

The last claim of error is the denial of plaintiff's motion for a new trial on the ground of newly discovered evidence. The showing made by plaintiff was that he had discovered that William Cowles had been convicted of various offenses, such as petty larceny, drunkenness, larceny and violation of the white slave law. These offenses were alleged to have occurred between 1939 and 1946.

 It is well settled law generally that newly discovered evidence which is strictly impeaching in nature, cannot be the basis for a new trial. 39 Am.Jur., New Trial, § 167. The rule has been stated in Wisconsin in State v. Debs, 217 Wis. 164, 166, 258 N.W. 173, 174, as follows: "Under the decisions of this court, evidence which merely tends to impeach the credibility of a witness does not warrant a new trial upon the ground of newly discovered evidence." This statement was quoted and approved in In re

Kintopp's Estate, 250 Wis. 381, 388, 27 N.W.2d 481, 484.

Under Rule 59 Federal Rules of Civil Procedure, 28 U.S.C.A., a motion for a new trial is addressed to the sound discretion of the trial judge. Under the circumstances of this case, we hold there was no abuse of discretion.

Judgment affirmed.