BURKHALTER, Plaintiff and Respondent, vs. HARTFORD ACCIDENT & INDEMNITY INSURANCE COMPANY and others, Defendants and Appellants.*

*December 6, 1954—January 11, 1955.*

* Motion for rehearing denied, with $25 costs, on March 8, 1955.

386

For the appellants Hartford Accident & Indemnity Insurance Company and Joseph Rucinski there was a brief and oral argument by *M. S. King* of Wisconsin Rapids.

For the appellant Minnesota Farmers Mutual Casualty Company there was a brief by *Graves & Chambers* of Wisconsin Rapids, and oral argument by *R. B. Graves*.

For the respondent there were briefs by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, and oral argument by *Victor H. Breitenfield.*

MARTIN, J.   The accident happened at about 7:30 a. m. on October 11, 1950, at the intersection of State Highway 21 and U. S. Highway 12, north of Tomah. Plaintiff was a passenger in an automobile driven by Arnold Kuehl in a northerly direction on Highway 12, which is an arterial highway. Joseph Rucinski was driving his automobile in a westerly direction on Highway 21. The view was unobstructed in all directions at this intersection.

Rucinski testified that he stopped two or three car lengths from the stop sign east of the intersection and stopped again four or five feet from the highway; that he looked to the north and to the south but saw no traffic; that he proceeded into the intersection in second gear and was hit by the Kuehl car coming from the south; that he was about three fourths of the way through the intersection when his car was struck.

A traffic officer testified that there were skid marks made by the Kuehl car which he estimated at 25 feet in length.

Kuehl testified that he was driving 45 to 50 miles per hour as he approached the intersection. His testimony as to when he first saw the Rucinski car is inconsistent, varying from an estimate of 300 feet from the intersection to a point immediately before the impact. He testified he saw that Rucinski was not stopping at the intersection and he put on his brakes but did not turn to the right or left. One version of his braking was that he applied the brakes when he saw Rucinski was not stopping and continued to apply them until the impact. Another version was that he applied the brakes and released them three times before the impact. He was asked whether, if he had continued to apply the brakes instead of

releasing them the last time, he could have stopped his car before the impact, and he answered, "Maybe I could have."

The special verdict submitted questions respecting Arnold Kuehl's negligence as to speed, lookout, management and control, and yielding the right of way. The jury answered the speed question "No." It answered the other questions "Yes," as well as the questions on causation in those respects. In respect to Joseph Rucinski's negligence, it was asked to find as to speed, lookout, management and control, claiming the right of way, and stopping at the arterial. All such questions were answered in the affirmative, as were those on causation. Comparison of negligence was made as noted above.

The verdict as submitted was improper and there must be a new trial. Rucinski's testimony was that he did not see the Kuehl car at any time before the collision. That being true, the question on management and control should not have been submitted. Complete failure to maintain a lookout makes it impossible for a driver so to manage and control his car as to avoid an accident. Speed and right of way, however, are statutory and should be submitted separately. These matters are so thoroughly discussed in *Reynolds v. Madison Bus Co.* (1947), 250 Wis. 294, 26 N. W. (2d) 653, that there is no need to go into them here. See also *Hagen v. Thompson* (1947), 251 Wis. 484, 29 N. W. (2d) 515; *Nelson v. Chicago, M., St. P. & P. R. Co.* (1948), 252 Wis. 585, 32 N. W. (2d) 340.

As to right of way, inconsistent verdicts will largely be avoided if trial courts will frame the special verdict to state that the jury is not to answer the question inquiring as to failure of the driver approaching from the left to yield, if it answers in the affirmative the question either of speed or failure to stop for the arterial on the part of the driver coming from the right.

Since a new trial must be had, other questions presented on this appeal need not be discussed.

That portion of the judgment granting Minnesota Farmers recovery on its cross complaint for property damage paid to Kuehl under its collision policy must stand since there has been no appeal therefrom.

*By the Court.*—The portions of the judgment appealed from are reversed, and cause remanded for a new trial.

The following memorandum was filed on March 8, 1955:

PER CURIAM (*on motion for rehearing*). It having been called to the court's attention that no exception was taken to the assessment of damages, either that it was excessive or inadequate, it follows that on the new trial the damages will stand as awarded. The mandate will be amended to read:

The portions of the judgment appealed from are reversed, and cause remanded for a new trial on all issues except damages.