WELLS, Special Administrator, Respondent, vs. DAIRYLAND MUTUAL INSURANCE COMPANY, Appellant.

*December 6, 1956—January 7, 1957.*

508

For the appellant there were briefs by *Engelhard, Snod-grass & Goerdt* of La Crosse, and oral argument by *Lawrence M. Engelhard.*

For the respondent there was a brief by *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, and oral argument by *William J. Gleiss* and *Leo J. Goodman.*

CURRIE, J.  The issues raised on this appeal are:

(1) Is there any credible evidence to sustain the findings of causal negligence on the part of the cabdriver Tucker?

(2) If there is such credible evidence, was the negligence of Meyers at least equal to, or greater than, the negligence of Tucker as a matter of law?

(3) If defendant is not entitled to a dismissal on the merits, should a new trial be directed because of duplicity in the verdict?

South Water street has a concrete pavement 40 feet wide and runs in a general northerly and southerly direction. Tucker was driving a cab southerly on this street at about 7:30 in the evening when such cab struck Meyers as he was crossing such street. Meyers resided with his daughter in a house located on the west side of this street somewhat south of the point of the accident. Two eyewitnesses to the accident, Quilling and Armstrong, testified as to the direction Meyers was walking when struck by the cab.

Quilling was seated on his front porch on the east side of the street about opposite to where the accident occurred. He testified to having watched Meyers approach on the east sidewalk until he arrived in front of Quilling's house; that Meyers then started to cross diagonally across the street; that Quilling saw the cab approach from the north driving south when such cab was 150 feet north of the point of the

accident; and that Meyers was struck when he was nearly across the street. Armstrong, called as a witness by the defendant, on the other hand, testified that Meyers was attempting to cross the street from the west to the east and stepped out from in front of a car parked at the west curb facing south, and that he was struck when but 10 feet east of the west curb.

On this appeal, it is only necessary for this court to consider such evidence that supports the findings attacked. *Heibel v. Voth* (1955), 271 Wis. 350, 353, 73 N. W. (2d) 421, and *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740. Therefore, we assume that the jury accepted Quilling's and not Armstrong's version of the direction in which Meyers was walking when struck by the cab.

A traffic officer testified that the only visible damage to the cab, as a result of its striking Meyers, was to the right-windshield pillar and to the lower right-hand corner of the windshield which was broken. It is thus apparent that it was the right side of the cab, and not any portion of the front thereof, which struck Meyers. However, there was testimony that the cab swerved to the left at or just before the moment of impact, which explains why the front of the cab apparently did not strike Meyers.

The only evidence tending to establish negligent speed upon the part of the cabdriver, Tucker, is the testimony of Quilling. He was a former county clerk of Dunn county and a retired merchant who had driven automobiles for many years. Quilling testified that the cab was traveling at a high rate of speed which he estimated at 40 to 45 miles per hour. He had an opportunity to first view the cab and did so observe it when it was 150 feet north of the place of impact. On the other hand, he testified that the cab came to a stop in a distance of 10 to 15 feet after the impact. It is a matter of common knowledge that it is a physical impossibility to

bring a moving automobile traveling at 40 miles per hour to a stop in a distance of 15 feet under the circumstances which existed here. However, there is the possibility that Tucker may have greatly reduced his speed prior to the striking of Meyers as well as the likelihood that Quilling overestimated the cab's speed. The credibility of Quilling's testimony, and the weight to be accorded it, were for the jury. We are unable to rule as a matter of law that there is no credible evidence to sustain the jury's finding of causal negligence on the part of Tucker as to speed.

When we come to consider whether there is credible evidence to sustain the findings that Tucker was causally negligent as to lookout and management and control we are faced with the presumption that a decedent driver is presumed to have exercised due care in both respects. Such presumption disappears from the case when evidence is introduced from which the jury may reasonably infer that the deceased driver was negligent in the respect at issue. *McCarty v. Weber* (1953), 265 Wis. 70, 73, 60 N. W. (2d) 716. Assuming, as we must on this appeal, that Meyers was crossing the street from east to west, and was struck when nearly across, there is sufficient evidence from which the jury could well infer that Tucker was negligent in some respect beyond speed. Was such negligence in the field of lookout; was it failure to exercise proper management and control; or was it both? This is the knotty problem which we must decide in this case.

In *Weber v. Mayer* (1954), 266 Wis. 241, 63 N. W. (2d) 318, we were confronted with a similar problem. That case involved an intersection collision between two vehicles in which one of the drivers was instantly killed. The jury found the decedent causally negligent with respect to both lookout and control. We held that the finding as to lookout was sufficiently supported by the facts that there had been no sudden turning of the car prior to the collision and no applica-

tion of brakes. On the other hand, it was held that the finding as to negligent management and control could not stand because there was no evidence from which it could be inferred that such operator had ever seen the other vehicle in time to have taken any effective action to avoid the collision. This result is consistent with our later holding in *Burkhalter v. Hartford Accident & Indemnity Ins. Co.* (1955), 268 Wis. 385, 68 N. W. (2d) 2, 68 N. W. (2d) 732, that a driver, who admits not having seen the approaching vehicle with which his own car collides, cannot be found guilty of causal negligence as to management and control.

In the instant case there was a swerving of the cab to the left prior to the impact. Furthermore, the jury were entitled to draw the inference from Quilling's testimony that there had been a reduction in speed of the cab just prior to the accident, because of the cab having stopped after the impact in a distance of 15 feet. The swerving and the reduction of speed indicate that Tucker saw Meyers at some point prior to the accident. Where there is evidence giving rise to the inference that a decedent driver did observe the object collided with prior to the impact, the jury should not be permitted to speculate as to the point where such observation was made by decedent. The presumption that Tucker exercised due care as to lookout has not been rebutted, and, therefore, it must be assumed that, because of such presumption, he did see Meyers in time to have taken effective action to avoid striking him. It necessarily follows that there is credible evidence to support the finding as to Tucker's causal negligence with respect to management and control.

In cases involving a driver whose lips have not been sealed by death, it is possible to sustain jury verdicts finding such operator guilty of negligence as to both lookout and management and control. Cases reaching such result are *Robinson v. Briggs Transportation Co.* (1956), 272 Wis. 448, 76 N. W. (2d) 294, and *Dahl v. Harwood* (1953), 263 Wis. 1,

56 N. W. (2d) 557. In those cases the driver admitted not seeing the object collided with until he had reached a point which permitted the jury to infer that there had been a failure of lookout which had impaired, but not extinguished, his power to take effective action to avoid the collision. On the other hand, in a case involving a deceased driver, there ordinarily will be no evidence establishing the point at which he first observed the object with which his vehicle collided. This factor distinguishes the facts in the instant case from those in the *Robinson* and *Dahl Cases*.

We are of the opinion that in cases involving a deceased driver, under a fact situation similar to the one here presented, the mere happening of the accident supports a finding of either causal negligence as to lookout or management and control, but not both. As to which of these two grounds of causal negligence a jury should be permitted to find has caused us no little perplexity and concern to solve. In reaching the result we have, that the negligence consisted of management and control, and not lookout, we are fully aware of the fact that a fairly convincing argument could be made for the opposite result. However, we prefer the conclusion arrived at herein.

While it may be repetitious, we restate our conclusion as follows: In cases involving a driver, who is unable to testify as to the lookout he maintained immediately prior to a collision because of death or amnesia, he ordinarily cannot be found guilty of causal negligence as to both lookout and management and control. If there is no evidence from which it can reasonably be inferred that he saw the object collided with, then his negligence consists of lookout and not management and control. (*Vogel v. Vetting* (1953), 265 Wis. 19, 60 N. W. (2d) 399, while right in its result, is overruled on this point.) On the other hand, if there is evidence indicating that such operator did see the object collided with

prior to the accident, his negligence lies in the field of management and control, and not lookout.

We thus have a duplicitous verdict in the case at bar with respect to the causal negligence of Tucker. While this may be material in considering the issue of directing a new trial, it has no significance in considering whether the defendant is entitled to a dismissal on the merits. This is because any finding of causal negligence on the part of Tucker is sufficient to support the verdict.

Counsel for the defendant strongly urge that the negligence of the pedestrian Meyers must be held as a matter of law to be at least equal to or greater than the negligence of Tucker. Much emphasis is placed upon the failure of Meyers to have yielded the right of way to the cab as he was required to do by sec. 85.44 (4), Stats., which provides as follows:

"Every pedestrian crossing a highway at any point other than a marked or unmarked crosswalk shall yield the right of way to vehicles upon the highway."

In the following cases this court has refused to find as a matter of law that the negligence of a pedestrian crossing a highway other than at a crosswalk, who failed to yield the right of way to an approaching motor vehicle and was struck by the same, was equal to or greater than the negligence of the driver. *Albrecht v. Tradewell* (1955), 271 Wis. 303, 73 N. W. (2d) 408; *Taylor v. Western Casualty & Surety Co.* (1955), 270 Wis. 408, 71 N. W. (2d) 363; *Johnson v. Viebrock* (1953), 263 Wis. 284, 57 N. W. (2d) 337; and *Grohusky v. Ferry* (1947), 251 Wis. 569, 30 N. W. (2d) 205. It is only in an exceptional case that this court will disturb a comparison of negligence made by a jury and we do not consider the instant case to be such.

Defendant's counsel cite *Crawley v. Hill* (1948), 253 Wis. 294, 34 N. W. (2d) 123, and *Post v. Thomas* (1942), 240 Wis. 519, 3 N. W. (2d) 344, which involved the striking

of a pedestrian by a motor vehicle where this court did hold as a matter of law that the negligence of the pedestrian was equal to or greater than that of the driver. However, the facts in such two cases readily distinguish them from the instant case. In the *Crawley Case* the pedestrian ran out into the highway directly into the path of the oncoming car and had traveled but approximately six feet into the highway when he was struck. The plaintiff in the *Post Case* came out into the street between two parked cars and was struck after taking but four or five steps at the most. On the other hand, Meyers in the case now before us had nearly completed the crossing of the entire width of the street when struck, according to the testimony of the witness Quilling.

. The case of *Weber v. Barrett* (1941), 238 Wis. 50, 55, 298 N. W. 53, is cited in defendant's brief as a case where a judgment for the wrongful death of a pedestrian was reversed and the complaint ordered dismissed even though the decedent had traversed more than half the width of the street when struck by an approaching cab. However, this court found that such pedestrian "was intoxicated enough to become confused and not capable of making a correct observation" and determined as a matter of law that there was no negligence on the part of the cabdriver.

Lastly, we must pass upon the contention advanced that the defendant should be awarded a new trial because of the error of the trial court in submitting a duplicitous verdict as to Tucker's negligence. There is no question but under the decisions of this court that defendant would be entitled to such new trial if it has not waived its right to raise such issue on this appeal.

We find that counsel for the defendant did properly object on the record to the form of the verdict before argument to the jury, which objection specifically pointed out to the trial court the manner in which the verdict was duplicitous. How-

ever, we do not consider that the error of a duplicitous verdict was properly called to the trial court's attention after verdict.

In addition to moving after verdict for judgment notwithstanding the verdict, and for the court to change certain answers, and upon the verdict as so changed for a judgment of dismissal, defendant did move in the alternative for a new trial. The alternative motion for a new trial specified five grounds in support thereof, none of which specifically referred to a duplicitous verdict. We do not deem that merely alleging, as did defendant, in such a motion that the verdict is contrary to the evidence and contrary to law is sufficient in itself to properly raise the issue of duplicitous verdict before the trial court. No memorandum opinion passing on the motions after verdict was filed by the learned trial judge, and the order for judgment throws no light on whether the issue of duplicitous verdict was briefed or argued by defendant's counsel after verdict on the question of granting a new trial for error. In fact, the record before us is entirely silent on this point.

As to those errors which must be raised by a motion for new trial as a condition precedent to having this court pass thereon as a matter of right, and not discretion, we are constrained to hold that the burden is upon the party alleging error in this court to affirmatively establish by the record before us that such error was specifically called to the trial court's attention in considering the motion for new trial. Where the motion for new trial is couched in such general terms as not to do this, but the claimed error was specifically pointed out in a brief filed, or oral argument made, in support of the motion, one way of meeting such burden would be to have the bill of exceptions recite such fact.

Is the submission to the jury of a duplicitous verdict the type of error which must be properly raised in the trial court after verdict in order to have this court award a new trial

therefor as a matter of right, and not discretion? Viewed from the standpoint of which result would most accord with our conception of the proper administration of justice, the answer must be that it is. Appeals to this court are expensive and time consuming. A procedural device which affords an opportunity to a trial court to correct its own errors by directing a new trial, without the necessity of an appeal to this court to reach the same result, would seem to be in the public interest. During the course of a trial the trial judge often is required to "shoot from the hip" in making his rulings without the benefit of briefs or time to make an independent research of the authorities. A very different situation prevails when the trial judge has before him after verdict a motion for new trial grounded upon alleged error. Time will then permit the preparation and filing of briefs by counsel, and for the judge to do independent research of his own.

We consider most apropos the following quotation from 39 Am. Jur., New Trial, p. 42, sec. 17, appearing in Mr. Justice GEHL's opinion in *Ferry v. State* (1954), 266 Wis. 508, 511, 63 N. W. (2d) 741:

" 'While the primary object of a motion for a new trial is to secure re-examination of issues of fact, it serves also to bring to the notice of the trial court errors which may have been committed in the course of the trial, and enables the court to correct such errors without subjecting the parties to the expense and inconvenience of prosecuting review proceedings. In many jurisdictions a motion for a new trial is a condition precedent to a right to have the case reviewed in an appellate court. In other words, under the practice in most jurisdictions, it was the duty of counsel to give the trial court an opportunity, by motion for a new trial, to correct whatever errors it may have made in respect of matters which may properly be made the grounds of such a motion.' 39 Am. Jur., New Trial, p. 42, sec. 17."

When we approach the problem from the standpoint of attempting to find a controlling principle laid down in the

past decisions of this court we discover a chaotic inconsistency which cries out for rectification.

In *Plankinton v. Gorman* (1896), 93 Wis. 560, 562, 67 N. W. 1128, Mr. Justice MARSHALL, speaking for the court, declared: "A motion for a new trial is only necessary to preserve for review errors committed by the jury. Errors committed by the court are reviewable without such motion." This same principle was expressly approved in the following subsequent cases: *Sullivan v. Minneapolis, St. P. & S. S. M. R. Co.* (1918), 167 Wis. 518, 524, 167 N. W. 311; *Strnad v. Co-operative Insurance Mutual* (1949), 256 Wis. 261, 270, 40 N. W. (2d) 552; and *McNamer v. American Ins. Co.* (1954), 267 Wis. 494, 497, 66 N. W. (2d) 342. If this principle were held to govern the instant appeal, there would be no necessity for the defendant to have moved after verdict in the circuit court for a new trial grounded upon the error in submitting a duplicitous verdict.

However, we find that such principle laid down in *Plankinton v. Gorman, supra,* has been quite frequently departed from by this court. The giving of an erroneous instruction to a jury is an error committed by the court and not the jury. Nevertheless, we have held that such error cannot be raised on appeal in the absence of a motion after verdict in the trial court pointing out such error. *Graves v. State* (1860), 12 Wis. *591, *595; *Mossak v. Pfost* (1950), 258 Wis. 73, 76, 44 N. W. (2d) 922; *State v. Biller* (1952), 262 Wis. 472, 482, 55 N. W. (2d) 414; *Ferry v. State* (1954), 266 Wis. 508, 510, 63 N. W. (2d) 741; *Zombkowski v. Wisconsin River Power Co.* (1954), 267 Wis. 77, 81, 64 N. W. (2d) 236; and *Grinley v. Eau Galle, ante,* p. 177, 79 N. W. (2d) 797. Failure to submit a requested question in a special verdict is also error committed by the court. Nevertheless, we recently held that failure to move for a new trial because of such refusal constituted a waiver of the right

to raise the issue on appeal. *Huffman v. Reinke* (1955), 268 Wis. 489, 491, 67 N. W. (2d) 871.

If failure to submit a requested question in a special verdict cannot be raised on appeal without first having moved for a new trial after verdict in the trial court on such ground, there would seem to be no logical basis for invoking a different rule with respect to submitting a duplicitous verdict which included questions which should not have been submitted.

We think that the time has come to repudiate the cliché, that errors by the court are reviewable without necessity of first grounding a motion for new trial thereon, because we consider it to be highly erroneous. We deem the correct rule to be that no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial. Sec. 251.09, Stats., authorizes this court *in its discretion* to grant a new trial whenever we deem that there has been a miscarriage of justice. The exercise of such power is not dependent on whether the aggrieved party protected his rights by objection or motion in the trial court. While this power is sparingly exercised by this court, we do not hesitate to employ it in hardship cases to prevent a miscarriage of justice.

We decline to exercise our power to direct a new trial in the interests of justice in the instant case for the simple reason that we are not convinced that there has been any miscarriage of justice here, in spite of the duplicitous verdict returned. This is because we consider that there is strong likelihood that the jury might have made the same apportionment of negligence between Tucker and Meyers if the lookout question had been omitted from the verdict.

*By the Court.*—Judgment affirmed.