BRONK, by Guardian *ad litem,* and others, Respondents, vs. MIJAL and others, Appellants.

*February 5—March 5, 1957.*

For the appellants there were briefs by *Kivett & Kasdorf,* attorneys, and *Clifford C. Kasdorf, Alan M. Clack,* and *Bernard J. Adamkiewicz* of counsel, all of Milwaukee, and oral argument by *Clifford C. Kasdorf.*

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Edmund W. Powell* and *Kurt H. Frauen* of counsel, all of Milwaukee, and oral argument by *Mr. Frauen.*

CURRIE, J. The issues raised on this appeal are as follows:

(1) Is there any evidence to support the finding that the defendant Sylvester Mijal was negligent as to lookout?

(2) Was the negligent speed of Sylvester Mijal such an overpowering factor in causing the accident as to prevent any failure of lookout on his part from being a proximate cause of the accident?

(3) If Sylvester Mijal was causally negligent as to lookout, did the plaintiff Kenneth Bronk assume such negligence as a matter of law?

(4) Are the defendants entitled to a new trial because of the failure of the trial court to submit a question in the verdict inquiring as to whether Sylvester Mijal operated a motor vehicle while under the influence of intoxicating liquor?

The accident occurred on a pleasant summer evening when good driving conditions, including a dry pavement, prevailed.

A deputy sheriff testified that Highway 38 as it approached the curve and bridge was posted with signs warning traffic that the speed limit on that section of the highway was 35 miles per hour. This officer further testified that at least 300 feet to the south of the curve there was a traffic sign giving warning of a sharp curve. This sign was on the right-hand or east side of the highway and was visible to traffic moving northwesterly on Highway 38. The testimony is undisputed that the headlights of the Mijal car were turned on as it came out of Racine and proceeded toward the curve.

There is no testimony that Sylvester Mijal suffered from amnesia as a result of any injury sustained in the accident. Nevertheless, he claimed in his testimony given at the trial that he did not remember any of the details of the accident. However, when examined as an adverse witness, the following questions were asked him and he gave the following answers thereto:

"*Q*. How about this business of not seeing the curve, do you remember that now? *A*. Yes, I do.

"*Q.* You remember that you were driving along, and you didn't see the curve, and you missed it, is that right? *A.* Yes.

"*Q.* And you skidded just before the accident happened. *A.* Yes.

"*Q.* And you didn't see any signs indicating a curve, did you? *A.* That's because I didn't remember anything."

The skid marks made by the Mijal car clearly give rise to the inference that Sylvester did not apply his brakes until he was 114 feet from the bridge. The curve commences some distance to the southeast of the bridge. Inasmuch as the highway sign, warning of the approach of the bridge, was at least 300 feet southeast of the commencement of the curve, and Sylvester should have seen such sign before drawing even with it, the jury could reasonably infer that Sylvester did not see such warning sign. This is because of his failure to take any effective action to reduce his speed until he applied the brakes hard enough to make skid marks some 200 feet after passing the warning sign. This is corroborated by the testimony of an eyewitness to the accident, Ronald Schoeppe.

We deem that there was sufficient credible evidence to sustain the finding of the jury that Sylvester was negligent with respect to failing to keep a proper lookout. This brings us to that which we consider to be a crucial question on this appeal, viz., did the overpowering part played by speed in causing the accident prevent such negligent lookout from being a proximate cause thereof as a matter of law? Counsel for the defendants contend that the accident would have happened regardless of whether Sylvester had seen the curve warning sign, and irrespective of when he saw the curve itself. If counsel are correct in this contention, then obviously any negligent lookout would not have been a substantial factor in producing the accident, and, therefore, the same could not have been a proximate cause of the accident.

Parenthetically we might observe that this is one of those very rare instances when negligent lookout in a motor-vehicle accident case is not necessarily a proximate cause of the accident as a matter of law. This is because the jury reasonably might infer that the speed of the Mijal car was so great that, even if Sylvester had seen the warning sign at a point where the ordinarily prudent driver would have observed it, he would have been unable to reduce his speed sufficiently to have negotiated the curve.

Defendants' brief points out that Wisconsin's Manual for Motorists, at page 22, states that the average stopping distance of an automobile traveling at a speed of 70 miles per hour is 347 feet, and the jury might well have inferred that the speed of Mijal's car as it approached the curve was in excess of 75 miles per hour. This argument overlooks the fact that it was not necessary for Sylvester to have stopped his car to have avoided the accident. All that would have been required was a reduction of speed sufficient to have enabled him to negotiate the curve. It seems to us that the question of whether Sylvester's negligent lookout was a proximate cause of the accident properly lies within the field of the jury exercising its undoubted right to draw legitimate inferences from the evidence presented. We, therefore, conclude that the jury's finding that the negligent lookout was causal should not be disturbed on this appeal.

It is further urged by the attorneys for the defendants that the plaintiff Kenneth Bronk assumed the risk of Sylvester's negligent lookout as a matter of law. Among the cases cited in support of such contention is *Peterson v. Magnus* (1956), 272 Wis. 461, 76 N. W. (2d) 289. In that case the car of the defendant host-driver was struck in the rear fender by an oncoming automobile while such defendant was in the act of passing another vehicle. The defendant was endeavoring to drive a distance of 60 miles

over slippery, snowy roads in one hour's time, and had traveled the last 20 miles prior to the accident in fifteen minutes. The jury found the defendant causally negligent as to both speed and management and control and that the plaintiff passenger had assumed the risk as to both. This court held that, while a host's negligence as to management and control is usually of a momentary character that a guest does not assume, the negligent management and control under the special facts of the case could not be treated separately from the speed which the guest had assumed.

Such holding in *Peterson v. Magnus, supra,* is consistent with the prior determination of this court in the case of *Young v. Nunn, Bush & Weldon Shoe Co.* (1933), 212 Wis. 403, 410, 249 N. W. 278, wherein it was declared:

"If a host is proceeding at a negligent rate of speed, which the guest assumes, and by reason of this speed finds himself in a situation requiring instant decision and giving him opportunity for further negligence with respect to control, it is impossible to isolate the subsequent negligence from the prior negligence and to hold, in spite of the fact that the guest has acquiesced in the former, that the momentary character of the latter makes acquiescence impossible. In such a situation, where the emergency itself is produced by negligence of the host, the guest who has assumed the risk of such negligence must be held to assume the risk involved in the emergency produced by it."

However, in the instant case we are not faced with any issue of assumption of risk as to management and control, but with one concerned with lookout. We have held that where a guest acquiesces in a host-driver operating his car for a considerable distance with a windshield clouded with frost or moisture, the guest may be found to have assumed the risk of the host's negligent lookout. *Haugen v. Wittkopf* (1943), 242 Wis. 276, 7 N. W. (2d) 886, and *Shrofe v. Rural Mut. Casualty Ins. Co.* (1950), 258 Wis. 128, 45

N. W. (2d) 76. Also, where there is evidence that the host to the knowledge of the guest has consumed intoxicating liquor in a quantity which might appreciably interfere with the exercise by the host of ordinary care in the operation of his vehicle, a jury is permitted to find assumption of risk as to lookout. *Frey v. Dick* (1956), 273 Wis. 1, 6, 76 N. W. (2d) 716, 77 N. W. (2d) 609. These appear to be the only exceptions to the general rule, that negligent lookout is ordinarily of such a momentary character that a guest cannot be found to have assumed the same, which this court has heretofore recognized.

It is possible to assume a hypothetical state of facts where the speed of an automobile might be so great that the driver could not read highway safety signs, such as the curve warning sign in the instant case. In such a situation a guest who assumed the negligent speed ought to be held to have assumed the negligence of his host in not seeing such a highway safety sign. However, we certainly cannot make such a determination as a matter of law under the facts here presented. For example, there was no evidence presented that the curve warning sign could not have been seen and read by the ordinary operator of a car proceeding at a speed of 75 miles per hour. We, therefore, conclude that the jury's finding that Kenneth Bronk did not assume the risk of Sylvester Mijal's negligent lookout must stand.

As a result of permitting the finding to stand, that there was no assumption of risk as to lookout, the plaintiffs are entitled to recover even though there was assumption of risk as to speed. This is because if a host-driver is found negligent in two respects, and the plaintiff guest is found to have assumed the risk of only one of such two grounds of negligence, such assumption of risk does not bar recovery as to the ground of negligence not assumed. *State ex rel. Litzen v. Dillett* (1943), 242 Wis. 107, 7 N. W. (2d) 599, 9 N. W. (2d) 80.

The last contention raised in behalf of the defendants is that a new trial should be granted because of the alleged error of the learned trial court in not submitting a question in the special verdict as to whether Sylvester Mijal was operating a motor vehicle while under the influence of intoxicating liquor.

Earlier in the evening prior to the accident five boys, including Kenneth Bronk and Sylvester Mijal, and three girls had gone out to a quarry northwest of Racine to drink beer and swim. The testimony is in conflict as to how many cans of beer Sylvester drank, such quantity varying from one and a half to four cans. Later Sylvester, Kenneth, and a third boy had driven into Racine to take one of the girls back to a restaurant where she had asked to be taken. The three boys were on their way out of Racine to return to their homes in Milwaukee when sighted and pursued by the police squad car.

Although counsel for the defendants requested the trial court to submit a question on intoxication in the special verdict, they failed to move for a new trial after verdict bottomed upon such alleged error. This failure precludes raising the issue as a matter of right on this appeal. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. (2d) 380.

However, it is not error for a trial court in a case such as this, where there is evidence of drinking by the host-driver, not to include a question on intoxication in the verdict but to cover such issue by proper instructions to the jury. *Frey v. Dick, supra.* This is because operating a motor vehicle while under the influence of intoxicating liquor does not in itself provide support for a cause of action to one who has been injured in an accident in which such vehicle participated. *McNamer v. American Ins. Co.* (1954), 267 Wis. 494, 66 N. W. (2d) 342. Such driving under the influence of in-

toxicating liquor must be combined with some phase of negligent operation such as speed, lookout, or management and control, in order to be actionable.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., dissents.