SPRAGUE, Appellant, vs. HAUCK, Administratrix, Respondent.
FREDERICK, Appellant, vs. SAME, Respondent.

*March 6—April 8, 1958.*

For the appellant Roy Sprague there was a brief by *David L. Phillips,* attorney, and *Burton Lepp* of counsel, both of Kenosha, and oral argument by *Mr. Lepp.*

For the appellant Rose Frederick there was a brief by *Earl D. Morton* and *Conrad J. Shearer,* both of Kenosha, and oral argument by *Mr. Shearer.*

For the respondent the cause was submitted on the brief of *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha.

CURRIE, J. The two principal issues here raised are:

(1) Is the inconsistency in the verdict such as to require a new trial?

(2) Is there any credible evidence to support the jury's finding of assumption of risk by the two passengers?

There is an inconsistency in the verdict because the jury, after absolving Hauck of any negligence as to lookout, nevertheless found that the two passengers assumed the risk of Hauck's negligence as to lookout as well as speed. Counsel for the plaintiffs request a new trial because of such inconsistency inasmuch as it is impossible to determine exactly what was the jury's determination with respect to whether Hauck was causally negligent as to lookout. They point out that negligent lookout is ordinarily of such a momentary character that a guest cannot be found to have assumed the same, and, therefore, the trial court should not have submitted any question as to the guests' assumption of risk as to lookout. The fact, that the passengers may have assumed the negligent speed of the host-driver, would not preclude the plaintiffs from recovering in the instant actions if the host were found causally negligent in another respect which was not assumed by the guests. *Bronk v. Mijal* (1957), 275 Wis. 194, 202, 81 N. W. (2d) 481.

We start with the basic premise that a decedent driver is presumed to have exercised due care for his own safety

in all respects including lookout, and such presumption remains until there is evidence introduced sufficient to rebut such presumption. *Weber v. Mayer* (1954), 266 Wis. 241, 249, 63 N. W. (2d) 318, and cases cited therein. After a careful reading of the record, we have reached the inescapable conclusion that the evidence would not sustain a finding that Hauck was causally negligent as to lookout.

The facts which have caused us to come to this conclusion are these: There was a fog which obscured vision at the time and place of the accident, and there is no evidence that Hauck could have seen the train any sooner than he did because of such fog. Sprague testified that there was a substantial slowing down of the car just prior to the impact caused by Hauck taking his foot off the accelerator and applying the brakes. The plaintiffs also offered testimony of a deputy sheriff that there were skid marks on the north half of the highway pavement which were 50 feet six inches in length and extended to the easterly rail of the easterly set of railroad tracks comprising the crossing, and that there were gouge marks between the west end of such skid marks and the easterly rail of the westerly set of railroad tracks. The train with which the station wagon collided was operating over the westerly set of tracks of this double-track crossing. The trial court excluded the testimony as to the tire skid marks on the ground that it was not sufficiently established that they had been made by Hauck's station wagon. In any event, the evidence is uncontroverted that Hauck did make a sudden application of brakes thus indicating that he did see the train prior to the collision. We have recently held that this will ordinarily preclude a deceased driver from being held negligent as to lookout. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 512, 513, 80 N. W. (2d) 380.

In view of our determination that the record would not sustain a finding of negligent lookout as to Hauck, the in-

consistent answers of the jury on such issue must be deemed to be immaterial surplusage.

However, there was ample evidence to sustain the jury's finding of causal negligent speed on the driver's part, because of his inability to bring his car to a stop within the distance he could see ahead. As the learned trial court commented in its memorandum opinion, if the jury had not made such finding, the court would have had to have made the same as a matter of law on the authority of *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 188, 83 N. W. (2d) 759. See also *Petlock v. Kickhafer,* ante, p. 74, 78, 87 N. W. (2d) 857, in which the same rule was applied in a case where it was contended the vision of the operator was obstructed. The crucial point confronting us is whether there is any credible evidence to sustain the jury's findings that Sprague and Miss Frederick assumed the risk of such negligent speed.

Sprague and Miss Frederick had been keeping company together for some time. At about eleven o'clock of the night of the accident they entered a tavern at Winthrop Harbor, which is located on U. S. Highway 32 about two miles south of the Wisconsin-Illinois state line. They remained in such tavern until closing time at 2 a. m. Two employees in this tavern testified as to the great amount of drinking in which Sprague and Miss Frederick indulged during such three-hour period. One of such employees stated that each consumed twenty bottles of beer and two mixed drinks. Both witnesses testified that Sprague and Miss Frederick were under the influence of intoxicating liquor when they left the tavern at two o'clock.

Hauck operated a radio and television business and came into the tavern around 1:15 or 1:30 a. m., after working late at his business. He was on friendly terms with Sprague and Miss Frederick. When the tavern was about to close Miss Frederick asked Hauck if he would drive Sprague and

her over to the Fossland's restaurant on U. S. Highway 41 in order that they might get something to eat. Hauck at first refused, giving as his reason that he had been working late and was tired. Finally he yielded to her persuasion and agreed to drive them to Fossland's, a decision that was to cost Hauck his life. Hauck had done very little drinking at the tavern, and all witnesses who testified on the point agreed that he was sober when he left the tavern.

The route taken was north on Highway 32 to the state line, and then west on the State Line road, which necessitated stops for two arterial highways, Lewis avenue and Green Bay road. The railroad crossing was about one and a half miles west of Green Bay road and a little to the east of Fossland's restaurant on Highway 41. Sprague testified that after going a short way they encountered patches of fog, and that the fog gradually got worse as they proceeded westerly. Stops were made for both arterial highways. The original speed was from 40 to 50 miles per hour. This was reduced to 30 to 40 miles per hour after crossing Green Bay road because of the fog. The fog was worse in low spots, and for 500 feet east of the double-track railroad crossing the land was lower than that to the east. Just before the collision Sprague saw "something," which "something" proved to be the train. The only sign warning of the crossing was a wooden-disk sign two feet in diameter bearing an "X" and the letters "R. R."

Because Sprague testified to observing dense fog 175 feet east of the crossing, counsel for the plaintiffs maintain that Hauck's negligent speed was of such momentary character that it could not be assumed by the two guest passengers. It is urged that Hauck's speed prior to arriving at that point was not such as to prevent him from stopping within the distance within which he could see ahead. This is because he was able to stop for the arterial stop signs at the intersections with both Lewis avenue and Green Bay road.

However, the jury had before them the testimony that the fog gradually became denser after the party got beyond Green Bay road. The jury, therefore, could well conclude that a speed of 30 to 40 miles per hour was excessive even before the station wagon reached the point 175 feet east of the crossing. There is no testimony by Sprague that he made any protest, and he could not remember whether Miss Frederick had done so. While the burden of establishing assumption of risk on the part of Miss Frederick was upon the defendant, the defendant met such burden by establishing that both passengers were intoxicated. From such intoxication the jury would be reasonably warranted in inferring that the passengers had put it without their power to voice any protest. While it has been held that a passenger who involuntarily falls asleep is excused from voicing a protest with respect to the negligent speed of the host-driver, we do not consider that this rule should be extended to a guest who is prevented from ability to protest by voluntary intoxication.

The finding of assumption of risk with respect to speed by both guests, therefore, is supported by credible evidence.

*By the Court.*—Judgments affirmed.

FAIRCHILD, J. (*dissenting*). Under the evidence it is quite apparent that the maximum safe speed varied with the degree of impairment of visibility and that the conditions as to visibility changed momentarily as the parties proceeded. In view of this proposition and because the testimony showed that the driver did cut his speed to some extent as the fog increased, I do not think that there was any basis in the evidence for a finding of assumption of risk as to speed.

Even if the verdict could properly be considered as sustained by evidence, I would favor granting a new trial in the interests of justice because of the inconsistencies in the verdict. If the driver was not negligent as to lookout, as the jury found, then the jury improperly found that the passengers

were negligent with respect to failing to warn him. They were no more able to see than he was. If the driver was not negligent as to lookout, the jury improperly found that the passengers assumed that risk. With such lack of understanding being exhibited by the jury with respect to these answers, I do not believe that it should be assumed that the jury understood its duty with respect to answering the questions on assumption of risk with respect to speed.