TOMCHEK, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. MUTUAL AUTOMOBILE INSURANCE COMPANY OF WISCONSIN and another, Defendants and Appellants: SHIMON and another, Defendants and Respondents.*

*February 5—March 3, 1959.*

* Motion for rehearing denied, with $25 costs, on May 5, 1959.

For the appellants there was a brief by *Holden &
Schlosser* of Sheboygan, and oral argument by *Wayne W.
Schlosser*.

For respondents Tomchek there was a brief and oral argu-
ment by *Dudley O. Emmert* of Manitowoc.

For the respondents Adolph Shimon and Farmers Mutual
Automobile Insurance Company there was a brief by *Clark,
Rankin, Nash, Emmerling & Spindler* of Manitowoc, and
oral argument by *John P. Nash*.

MARTIN, C. J.    Appellants contend that the trial court
erred in changing the answers of the jury in three subdivi-
sions of question 9, and we agree.

David Tomchek testified he had ridden with Balkansky
many times; that he considered him a good driver and felt
that he was driving all right at the time of the accident.

Respondents agree that the evidence is clear as to the
causal negligence of Balkansky in all respects found by
the jury. As to speed, it was the testimony of the two
disinterested witnesses, Mr. and Mrs. Lesperance, who made
their estimates on the basis of their own speed of 50 miles
per hour, that Balkansky was traveling at 70 or 75 miles per
hour as he passed them some 450 to 600 feet from the
intersection, and that he never slowed down for the inter-
section.

In *Bronk v. Mijal* (1957), 275 Wis. 194, 81 N. W. (2d)
481, this court considered the question whether—in a case
where speed plays an overpowering part in causing the
accident and the guest has assumed the risk as to such
speed, and there is also a finding of causal negligence as to

lookout—it may be held as a matter of law that the guest also assumed the risk as to lookout. In that case (p. 201) we referred to *Young v. Nunn, Bush & Weldon Shoe Co.* (1933), 212 Wis. 403, 410, 249 N. W. 278, where it was said:

"If a host is proceeding at a negligent rate of speed, which the guest assumes, and by reason of this speed finds himself in a situation requiring instant decision and giving him opportunity for further negligence with respect to control, it is impossible to isolate the subsequent negligence from the prior negligence and to hold, in spite of the fact that the guest has acquiesced in the former, that the momentary character of the latter makes acquiescence impossible. In such a situation, where the emergency itself is produced by negligence of the host, the guest who has assumed the risk of such negligence must be held to assume the risk involved in the emergency produced by it."

In the *Bronk Case, supra,* this court stated that it could not hold as a matter of law that there was assumption of risk as to lookout. It observed, however (p. 202):

"It is possible to assume a hypothetical state of facts where the speed of an automobile might be so great that the driver could not read highway safety signs, such as the curve warning sign in the instant case. In such a situation a guest who assumed the negligent speed ought to be held to have assumed the negligence of his host in not seeing such a highway safety sign. However, we certainly cannot make such a determination as a matter of law under the facts here presented. For example, there was no evidence presented that the curve warning sign could not have been seen and read by the ordinary operator of a car proceeding at a speed of 75 miles per hour."

In this case, of course, we have a finding by the jury that Tomchek assumed the risk with respect to negligent lookout, as well as all other aspects of Balkansky's negli-

gence. He had his head turned to the left, away from any warning sign that may have been on the roadside. Where the best evidence was that Balkansky was traveling at a speed of 70 or 75 miles per hour as he approached the intersection, the jury was entitled to conclude that speed was the element which occasioned all the other items of negligence, and that since Tomchek acquiesced as to speed he assumed the risk of all.

It is true that negligent lookout is ordinarily a momentary failure which the guest does not assume. Negligence as to management and control, likewise, is usually of a momentary character, as in *Peterson v. Magnus* (1956), 272 Wis. 461, 76 N. W. (2d) 289. In that case this court held that where there is such excessive speed as might well be the sole cause of the accident, a finding of assumption of risk incident to momentary negligence as to management and control cannot be considered independently of the finding as to speed. The court observed that it was the defendant's speed which placed him in a position where proper control of his car was almost impossible.

We consider that the reasoning of that case is just as applicable to the matter of assumption of risk as to lookout under circumstances where speed is so great as to have an overpowering effect on the driver's ability to exercise ordinary care. In the instant case the jury could well believe that it was Balkansky's speed which made it almost impossible for him to maintain a proper lookout. Having seen the junction sign, Balkansky testified, he looked for a stop sign but did not see one. His failure to see the stop sign could logically be attributed to the fact that his speed and his passing of the Lesperance car placed him in the position of being unable to see it. Moreover, there is the testimony of the Lesperances that as the Balkansky car passed them the occupants looked backward. All this, at a speed of 70

or 75 miles an hour on a road 17 feet wide, Tomchek felt was "good driving." Certainly the circumstances justified the conclusion of the jury that Tomchek assumed the risk with respect to lookout as well as speed. The same view must be taken of the jury's findings of assumption of risk as to failure to stop for the arterial and failure to yield the right of way. It was entitled to infer that they were essentially attributable to the basic element of Balkansky's negligence, speed. If it was his speed, probably coupled with his passing of the Lesperance car, that made it impossible for him to see the stop sign, it was also his speed which made it impossible for him to stop and yield the right of way.

Appellants also raise some questions on Shimon's negligence and on evidence affecting the findings on damages, but in view of our decision on the question of assumption of risk it becomes unnecessary to discuss them.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiffs' complaint.