Hallows, J.
The important questions are: 1. Whether the plaintiff guest assumed the risk of the defendant host-driver’s negligence in respect to speed and management and control; and 2. whether the finding that the plaintiff guest assumed the risk of the defendant’s negligence respecting speed and management and control was inconsistent with the finding that such negligence increased the danger or added a new danger to that which may have existed when the plaintiff guest entered the car. The plaintiff contends the defendant’s negligent speed and management and control were such momentary acts that as a matter of law they could not be assumed by the plaintiff’s failure to protest, citing Olson v. Williams (1955), 270 Wis. 57, 70 N. W. (2d) 10; Mittelstadt v. Hartford Accident & Indemnity Co. *196 (1957), 2 Wis. (2d) 78, 85 N. W. (2d) 793; Webster v. Krembs (1939), 230 Wis. 252, 282 N. W. 564. Assuming arguendo that the defendant’s acts of negligence were momentary acts, the rule that a guest does not assume the momentary acts of negligence of his host does not apply to this case because of the host’s drinking and the guest’s knowledge thereof. A brief review of the facts is necessary.
On the evening of August 31st the defendant, aged nineteen, his date, Lois Olson, and Caroline Skovbroten, stopped at the Severson farm home between 8:30 and 9 p. m. After staying about an hour, they left with the plaintiff, aged fifteen, and a neighbor girl, Mary Ann, and stopped at Mary Ann’s home to pick up her sister, Betty. They then proceeded to the home of Jim Pendergast where they found a beer-drinking party in progress. At Pendergast’s, Elaine shared a can of beer with two other girls and later consumed one or two bottles of beer. Shortly before leaving the Pendergast home, Elaine became sick and vomited. However, the beer also made her feel “pretty good” and made her “laugh and fool around.” At the Pendergast home the younger people stayed mostly in the kitchen, while the older teen-agers, including the defendant, were in the living room. Elaine was back and forth during the evening in both rooms. During the evening the defendant drank three to five bottles of beer at Pendergast’s, perhaps some beer at the tavern which he visited on two occasions during the evening, the latter occasion being when he and a friend purchased a case of beer which they brought back to the Pendergast home.
About 1:30 a. m., when the party left the Pendergast home, the plaintiff got into the rear seat of the auto with Betty and Mary Ann. The defendant sat in the front seat with Lois and Caroline. Elaine testified she could tell that the defendant had been drinking, that the defendant’s driving frightened her, but she made no protest. The defendant *197 drove east from the Pendergast home on County Trunk Z, which is a narrow, winding, hilly, country road, at a speed estimated between 55 and 60 miles an hour. The accident took place about three and one-half miles east of the Pendergast home. The girls in the back seat were “laughing and fooling around.” Their conduct was variously described as fooling around, tickling, giggling, and jumping. Elaine was feeling “high and silly.” While the car was moving, she switched places by crossing over one of the girls in the back seat, and at another time she had her head out of the window in the right door of 'the two-door car, although she was a rear-seat passenger.
After leaving Pendergast’s the defendant, while lighting a cigarette, drove off the black-top and onto the shoulder of the road momentarily. Shortly thereafter it was discovered that the plaintiff had a severe cut on the back of her head and was dazed. The evidence is inconclusive on how she received this injury. As soon as it was discovered, one of the girls in the back seat yelled or hollered to the defendant to turn around and look at the plaintiffs head. Another stated that the plaintiff should be taken to a doctor. The defendant did not turn around immediately. After further urging to look at the plaintiff, he put his foot on the brake and slowed the car down. There is no testimony as to the extent the car was slowed down. At that time it was going down a long hill at the bottom of which was the bridge. County Trunk Z then ascends. County Trunk Z is about 20 feet wide in the vicinity of the accident, black-top, but at the bridge is 16 feet, four inches. The defendant saw the bridge ahead, was familiar with the road, and as he put on his brakes he turned around to look at the plaintiff in the back seat for several seconds. He testified there was nothing which prevented him from bringing the car to a complete stop, or further slowing down the car. Before *198 turning forward again, he released his brakes and as he looked ahead he saw he was over on the right side of the road and fairly close to the bridge, which he was unable to avoid striking. The impact was severe, tearing away the right fender and the right door, causing the car to turn over and land right side up about 100 feet east of the bridge, facing west, or in the opposite direction in which it was traveling. Elaine was seriously injured.
In companion-drinking cases, which the jury considered this to be, it is possible for the guest to assume momentary acts of negligence of the host-driver which are related to or have a connection with or are the result of the host’s drinking, when the guest knew or ought to have known that the host-driver had drunk sufficient intoxicating liquor to appreciably affect his driving. This assumption by the guest may be at the time the guest enters the car or sometime thereafter, depending on when the guest realizes the hazard and decides or assumes to continue. The inquiry on assumption of risk put to the jury in this case did not pinpoint the time of the assumption. The instructions were similar to those approved by this court in Steffes v. Farmers Mut. Automobile Ins. Co. (1959), 7 Wis. (2d) 321, 96 N. W. (2d) 501.
From the evidence, especially the defendant’s testimony that his drinking affected and somewhat slowed down his reactions, and the plaintiff’s testimony that she could tell the defendant had been drinking and she was afraid to ride with him, the jury could find that the plaintiff assumed the acts of the defendant’s negligence when she entered the car. There is also evidence from which the jury could find the assumption of risk after entering the car because of her failure to protest the defendant’s speed and conduct of driving off the road. In either case the momentary acts of negligence would be assumed. A driver affected by liquor is more apt to commit momentary acts of negligence than a driver *199 unaffected by intoxicating liquor. In Christensen v. Tollison (1959), 7 Wis. (2d) 216, 96 N. W. (2d) 330, we held that, where both the guest and the host were short on sleep and long on drink, the guest assumed the future risk of'the host’s negligence of lookout and speed. In Sanderson v. Frawley (1956), 273 Wis. 459, 78 N. W. (2d) 740, this court stated that the assumption of the risk by a guest who embarks on an automobile ride with a host-driver, whom the guest knows to be intoxicated, results from the guest’s knowledge of the host’s intoxication, whether obtained from participation or observation. Momentary acts of negligence, if connected or related to the host’s drinking, are necessarily assumed in the assumption of the host’s condition.
The second reason why the contention of the plaintiff cannot be upheld is because the speed of the defendant was not momentary. It may be conceded that the diversion of the defendant’s attention from the road by turning around to look at the plaintiff was momentary. However, this and releasing his brakes were so combined with the speed of the car that the lack of management and control cannot be separated therefrom. This was so held in Peterson v. Magnus (1956), 272 Wis. 461, 76 N. W. (2d) 289. The same reasoning was applied to momentary lookout in Tomchek v. Mutual Automobile Ins. Co. (1959), 6 Wis. (2d) 577, 95 N. W. (2d) 220.
This result would follow even on the plaintiff’s theory that negligence as to speed and management and control were new dangers or added dangers after the plaintiff entered the car, because there is sufficient credible evidence to justify the jury’s finding that the plaintiff assumed the defendant’s speed after getting into the car because of her failure to protest the defendant’s excessive speed on the narrow, winding road. This would be sufficient to assume the interrelated momentary negligence of lack of manage *200 ment and control. In this respect the case is similar to Ven Rooy v. Farmers Mut. Automobile Ins. Co. (1958), 5 Wis. (2d) 374, 92 N. W. (2d) 771.
The plaintiff contends that an inconsistency exists in the verdict. The argument is based on the view that when the jury found the plaintiff assumed the risk of the defendant’s negligence, the assumption occurred when the plaintiff entered the car and, consequently, the negligence so assumed could not increase the danger or add a new danger thereafter, as found in the answers to question 3 in the verdict. The plaintiff relies on Frey v. Dick (1956), 273 Wis. 1, 76 N. W. (2d) 716, 77 N. W. (2d) 609, but the Frey Case is distinguishable on its important facts and on the theory on which the case was submitted to the jury.
Inquiry 3 in the verdict was not asked as a drinking or assumption-of-risk question. It was an inquiry to determine whether the host had violated the duty he owed to his guest and is often asked in nondrinking guest-host cases. The extent of the duty owed to a guest by a host has been stated many times by this court and was reviewed and well stated in Ameche v. Ameche (1955), 271 Wis. 170, 72 N. W. (2d) 744. An inquiry such as made in the case at bar need not be made when there is an inquiry as to ordinary negligence of the host. In Culver v. Webb (1944), 244 Wis. 478, 12 N. W. (2d) 731, this court held that an inquiry had to be made as to the failure of the host to exercise the skill and judgment he possessed, even though there was no evidence that the host did not possess the skill and judgment of a man of ordinary prudence. However, in Heagney v. Sellen (1956), 272 Wis. 107, 74 N. W. (2d) 745, 75 N. W. (2d) 801, this court expressly reversed the Culver Case and in effect also modified Saxby v. Cadigen (1954), 266 Wis. 391, 63 N. W. (2d) 820, and held that the guest meets his burden of proof of showing that the host failed to exercise the skill and judgment he possessed in the management and *201 control of his car at the time of the accident when he proves that the host failed to exercise ordinary care in the management and control of his car. Such proof establishes a prima jade case on the theory that, in the absence of any evidence in the record that the host was not an ordinarily prudent driver, he would be presumed to be one until the host-driver went forward with the proof to show his skill and judgment were different from that of an ordinarily prudent driver.
An inquiry framed in terms of an additional risk or new danger after the guest enters a car attempts to inquire whether the host failed to exercise the skill and judgment the host possessed in the management and control of the car at the time of the accident. Here the justification for such a question was not the drinking of the guest and host, but the driving ability of the defendant known to the plaintiff because of his prior accidents, in one of which the plaintiff was a guest and the defendant the driver. The question and the instruction were limited to the duty of the host. Drinking and assumption of risk were not touched upon in the instructions to this question, and we cannot assume that the jury considered them in its answer. We find no inconsistency in the verdict.
The plaintiff contends that her conduct in the rear seat of the automobile which resulted in a cut to her head was not causal. While this may be so, and there is some merit to the argument, it is immaterial on this appeal. The plaintiff cannot recover because of her assumption of the risk. Furthermore, while the question of whether the plaintiff was negligent was raised in the trial court, this assignment of error on causation was not raised and therefore cannot be raised on appeal. The questions of whether the court erred in failing to submit a question in the special verdict in respect to the defendant’s lookout and in instructing the jury to consider the effect of the defendant driver’s drinking in answering the assumption-of-risk question are not properly *201a raised on appeal because they, likewise, were not raised in the court below on motions after verdict. Bronk v. Mijal (1957), 275 Wis. 194, 81 N. W. (2d) 481; Wells v. Dairyland Mut. Ins. Co. (1957), 274 Wis. 505, 80 N. W. (2d) 380; Rud v. McNamara (1960), 10 Wis. (2d) 41, 102 N. W. (2d) 248; Musha v. United States Fidelity & Guaranty Co. (1960), 10 Wis. (2d) 176, 102 N. W. (2d) 243.
The following opinion was filed November 29, 1960:
By the Court. — Judgment affirmed.
Fairchild, J., dissents.