Rud, Respondent, v. McNamara, Appellant.

*March 7—April 5, 1960.*

For the appellant there was a brief and oral argument by *Frank E. Huettner* of Cadott.

For the respondent there was a brief by *Whelan & Morey* of Mondovi, and oral argument by *Randall E. Morey*.

HALLOWS, J.   The issue raised on this appeal is whether there is sufficient credible evidence to sustain the finding of the jury. To decide such an issue we must view the evidence in a light most favorable to sustain the verdict. *Ruid v. Davis* (1959), 8 Wis. (2d) 288, 99 N. W. (2d) 129; *Mossak v. Pfost* (1950), 258 Wis. 73, 44 N. W. (2d) 922; *Madison Trust Co. v. Helleckson* (1934), 216 Wis. 443, 257 N. W. 691. The defendant does not claim that representations concerning the condition of the old furnace were not made, but contends that they were not

false and that the plaintiff did not believe or rely on them. The defendant, a young man of thirty years with some nine years of practical experience in the repair and sale of furnaces, was conducting a house-to-house canvass in the Mondovi area for the cleaning and sale of furnaces. The plaintiff, a lady of sixty-nine, owned a two-story dwelling in Mondovi which she rented to the Shobergs. The defendant's representative, Dressel, called on Mrs. Shoberg and she told him the furnace was causing trouble and that there was an oily, greasy film on the windows and the woodwork. Dressel then called on the plaintiff at her farm home outside of Mondovi to solicit an order for the cleaning of the furnace. An agreement was made March 26, 1957, for the cleaning of the furnace for the sum of $30.

The wood-and-coal-burning hot-air furnace was originally installed in the house by the plaintiff's father in 1926, and in September, 1954, the plaintiff converted it to an oil-burning furnace by installing an oil-burning unit. The evidence is conflicting whether the furnace was working properly and whether there was an oily, greasy film on the windows, woodwork, and registers. Mrs. Shoberg testified that the furnace would not heat the upstairs of the house and the windows, woodwork, and registers became coated with an oily film. The plaintiff testified that the furnace worked properly and did not give off soot or film. On March 27th or 28th, the defendant and his employees in the presence of the plaintiff started to clean the furnace. Upon removing the hood of the furnace the defendant pointed out that the fire pot was buckled and told the plaintiff the furnace was defective. During the ensuing conversation he told the plaintiff that she was lucky it did not explode and cause an awful mess in the house, and that the furnace could not be used. Upon this inspection the defendant also testified that there was a

crack in the bulge and that the radiator of the furnace was rusted through. The plaintiff denied that the defendant showed her the radiator or any rusted parts or any crack. The plaintiff thought this bulge, which was later discovered to extend entirely around the furnace, was a corrugation which was cast into the furnace when it was made. However, after some further conversation in which the plaintiff was told that the furnace could not be repaired, that she needed a new furnace, and that she would not get as much rent from the tenants if they were required to use oilstove heat, the defendant and the plaintiff went upstairs from the basement where the defendant proceeded to show the plaintiff various types of furnaces from a catalog. The plaintiff allowed the defendant to pick the type of furnace which would be suitable for the house and would utilize the present oil burner. A contract was then entered into for the purchase of the new furnace for $1,000. After signing the agreement, the plaintiff returned to the cellar and found the workmen pounding the fire pot of the furnace with sledge hammers. The old furnace was junked. There was considerable testimony about the improper installation of the new furnace which is not material to the issue. This is not a case of a salesman puffing or misrepresenting his own merchandise, but one of misrepresentation of the condition of the old furnace, and of the immediate necessity of purchasing the defendant's merchandise.

The testimony was conflicting concerning the condition of the old furnace. The witnesses for the plaintiff testified that even if there were a bulge in the furnace it would not be unsafe, that on a prior examination of the furnace in 1954 there was no crack in the furnace or rusted radiator, that the furnace worked well and did not give off soot or film, and that on the day the furnace was to be

cleaned the tenant had laundry hanging in the basement. The witnesses for the defendant, including the tenant, testified that there was a crack in the furnace and the radiator was rusted through. This testimony presented a typical fact situation for the jury, and it was the jury's duty to determine the credibility of the witnesses and accord such weight to their testimony as it thought proper. This was credible evidence on which the jury could find that the representations made by the defendant were false.

The defendant contends that the plaintiff did not believe the representations and therefore did not rely on them. If the plaintiff did not ultimately believe the furnace was defective, unsafe, and could not be repaired, it would have been natural for her to call in local furnacemen to verify the condition of the furnace, or not to purchase the new furnace. There was some testimony that the average life of a furnace of that type would be twenty-five to thirty years, or few furnaces beyond that age were serviceable. This would be some evidence tending to show that the furnace's useful life was at an end and the plaintiff needed a new furnace. However, the jury could conclude that this furnace was one of the few and, regardless of its limited future, it was not defective or unsafe at the time the defendant said it was. The jury could conclude that the plaintiff, who only wanted the furnace cleaned, then at the most repaired, finally decided it was necessary because of the defendant's statements to purchase a new furnace immediately. It was March, the house was without heat, the tenant had three small children, and something had to be done to heat the house. Oilstove heat was discouraged. The plaintiff trusted the defendant to pick out the proper type of furnace. Within a matter of hours he secured the furnace at Eau Claire and commenced installing it.

The jury could well conclude under the circumstances that a woman sixty-nine years old, who had no prior intention of purchasing a furnace and who had made no independent inquiry concerning her need or the condition of the old furnace, was induced by the representations of the defendant to purchase the new furnace.

We find here the elements necessary to constitute fraud by false representations. The representations are admitted. They were found to be false. The plaintiff believed them and relied on them and consequently was deceived to her damage. This appeal does not question the amount of damages found by the jury. The elements of what constitutes actionable fraud are well known and many cases have been decided. *Helberg v. Hosmer* (1910), 143 Wis. 620, 128 N. W. 439; *Woteshek v. Neuman* (1912), 151 Wis. 365, 138 N. W. 1000; *Engel v. Van Den Boogart* (1949), 255 Wis. 81, 37 N. W. (2d) 852. The verdict of the jury was approved by the trial judge who saw and heard the witnesses, and, upon a review of the testimony, we conclude that the jury was convinced by clear and satisfactory evidence of the plaintiff's version of the facts.

The defendant claims that the question submitted in the special verdict was defective because each of the four elements constituting actionable fraud was not covered by a separate inquiry. The defendant's request for such questions was denied by the trial court. In his motions after verdict the defendant did not request a new trial based on this alleged error. An error committed by the trial court is not reviewable as a matter of right on appeal without being founded upon a motion for a new trial when the error could be corrected by the trial court's granting a new trial. *Musha v. United States F. & G. Co.*, post, p. 176, 102 N. W. (2d) 243; *Michalski v. Wagner* (1960),

9 Wis. (2d) 22, 100 N. W. (2d) 354; *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. (2d) 380. We find no miscarriage of justice in this case upon which to exercise our power of directing a new trial under sec. 251.09, Stats. Neither are we convinced the court should have separated the question of fraud into four separate inquiries in the special verdict. Too many inquiries tend to confuse juries.

*By the Court.*—Judgment affirmed.