Raymond **KRONEBUSCH,**
et al., **Respondents,**

v.

**MVBA HARVESTORE SYSTEM,**
et al., **Defendants,**

**A.O. Smith Corporation, Appellant
(C6–92–400),**

**A.O. Smith Harvestore Products,
Inc., Appellant (C8–92–401).**

**Nos. C6–92–400, C8–92–401.**

Court of Appeals of Minnesota.

Aug. 11, 1992.

Review Denied Oct. 20, 1992.

Charles A. Bird, Bird & Jacobsen, William D. Mahler, Rochester, David F. Herr, R. Lawrence Purdy, Cooper F. Ashley, Mary R. Vasaly, Maslon Edelman Borman & Brand, Minneapolis, Malcolm L. McCune, Maddin, Miller & McCune, Nashville, Tenn., for Raymond Kronebusch, et al.

Frederick W. Morris, Blake Shepard, Jr., Leonard, Street and Deinard, Minneapolis, for A.O. Smith Corp.

Donald E. Egan, David K. Schmitt, Carole J. Ryczek, Stewart T. Kusper, Katten

Muchin & Zavis, Chicago, Ill., for A.O. Smith Harvestore Products, Inc.,

Stephen J. Smith, Smith & Tollefson, Owatonna, for amicus curiae Minnesota Trial Lawyers Ass'n.

John D. Sear, Hildy Bowbeer, Bowman and Brooke, Minneapolis, for amici curiae Product Liability Advisory Counsel and Equipment Mfrs. Institute.

Hubert H. Humphrey, III, Atty. Gen., Tracy M. Smith, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae State of Minn.

Robert T. Stich, Stich, Angell, Kreidler & Muth, Minneapolis, for amicus curiae Babson Bros. Co.

Considered and decided by FORSBERG, P.J., and LANSING and SHORT, JJ.

## OPINION

SHORT, Judge.

This fraud case involves the purchase of five Harvestore feed storage silos by Raymond and Larry Kronebusch (farmers). The jury returned a verdict in favor of the farmers in the amount of $3,700,000, and the trial court awarded $755,381 in attorney fees pursuant to Minn.Stat. §§ 325F.67 and 8.31. On appeal from that judgment and an order denying a new trial, A.O. Smith Corporation and A.O. Smith Harvestore Products, Inc. (manufacturers) argue the trial court (1) erred by awarding fees and costs for commercial transactions, and abused its discretion by (2) excluding rebuttal evidence, (3) improperly instructing the jury, and (4) using an erroneous special verdict form. We disagree and affirm.

## FACTS

The farmers bought five Harvestore silos for a total cost of $231,570 from an independent contractor (dealer) between 1968 and 1980. The farmers had no contact with the manufacturers about any of these five purchases. While the manufacturers designed, developed and manufactured the silos, they sell their products to local dealers. The local dealers sell, install and service the silos for the purchasers.

Harvestore silos are top loading, bottom unloading and sealed silos. By contrast, conventional concrete silos load and unload feed from the top and are not sealed. Harvestore silos are advertised as "oxygen-limiting silos" which allegedly offer farmers some distinct advantages over conventional silos. In 1970, the farmers discovered moldy corn as they cleaned out a silo. They contacted the local dealer, who refitted the silo. In 1985, the farmers discovered substantial mold growth in their silos and initiated this lawsuit.

The trial took almost six weeks. One of the farmers' experts testified the manufacturers knew their representations that (a) Harvestore silos provided "oxygen-free storage," and eliminated "oxygen leaks," and (b) their "unloader system was designed to exclude air" and their relief valve "operated in only extreme situations," were false statements. Another expert testified the manufacturers knew prolonged heating from oxygen exposure lowered feed energy output. In defense, the manufacturers offered documents to show their state of mind at the time the advertisements were prepared. The trial court excluded those studies as hearsay. Over objections from the defense, the trial court instructed the jury on "indirect representations" and submitted the case on a special verdict form.

## ISSUES

I. Did the trial court err by awarding the farmers attorney fees and costs under Minn.Stat. §§ 8.31 and 325F.67?

II. Did the trial court abuse its discretion by excluding the manufacturers' scientific studies and report digests?

III. Did the trial court abuse its discretion by instructing the jury on indirect representations?

IV. Did the trial court abuse its discretion by submitting the case on a special verdict form?

## ANALYSIS

### I.

The construction of a statute is a question of law for the court, and is subject to de novo review on appeal. *Hibbing Educ. Assoc. v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985); *State v. Moore*, 431 N.W.2d 565, 567 (Minn. App.1988). When the words of the statute are unambiguous, we must give effect to the plain meaning of the statute. *Feick v. State Farm Mut. Auto Ins. Co.*, 307 N.W.2d 772, 775 (Minn.1981). If the statute is ambiguous, we must ascertain the legislature's intent. Minn.Stat. § 645.16 (1990).

The manufacturers argue Minn. Stat. § 325F.67 protects consumers, not commercial farmers. We disagree. Minn. Stat. § 325F.67 is a criminal statute which prohibits the public dissemination of misleading advertising with the intent to sell something to the public even if no one suffers pecuniary damage. *See State v. Andrew Schoch Grocery Co.*, 193 Minn. 91, 92, 257 N.W. 810, 811 (1934) (discussing statute's purpose). The statute is silent on whether the phrase "to the public" includes both consumers and non-consumers. We must therefore ascertain and effectuate the legislature's intent.

The statute was originally codified as Minn.Stat. § 8903 (1913) under the title "Crimes Against Property."[1] The title of chapter 325F, "Consumer Protection; Products and Sales," does not reflect a legislative intent to limit the statute's application to consumers because the revisor of statutes, not the legislature, placed the statute under chapter 325F. *See In re Dissolution of School District No. 33*, 239 Minn. 439, 443–44, 60 N.W.2d 60, 63 (1953) (revisor's actions do not show legislative intent).

The legislature, however, has amended the statute to eliminate the need to show pecuniary or specific damages. 1953 Minn.

Laws ch. 438, § 1. That legislative act suggests an intention to eliminate and punish the public dissemination of false advertising, rather than to compensate potential losses. Interpreting "to the public" as including both consumers and non-consumers gives full effect to this intent.

Our interpretation is consistent with the attorney general's enforcement of the statute and prior case law. In district court, the attorney general has successfully applied Minn.Stat. § 325F.67 to cases where the false advertising affected farmers. *See Love v. Amsler*, 441 N.W.2d 555, 559 (Minn.App.1989) (we may consider enforcement patterns in interpreting statutes), *pet. for rev. denied* (Minn. Aug. 15, 1989). Minnesota courts have focused on the defendant's actions rather than the complaining party's consumer or non-consumer status. *See, e.g., State by Head v. AAMCO Automatic Transmissions, Inc.*, 293 Minn. 342, 346–47, 199 N.W.2d 444, 447–48 (1972) (franchisee cross-claimed against franchisor); *Avery v. Solargizer Int'l Inc.*, 427 N.W.2d 675, 677 (Minn.App.1988) (distributors sued franchisor).

This interpretation does not undermine the Uniform Commercial Code because criminal liability for false advertising cannot be contracted away by commercial entities, parties do not contractually allocate the risk of false advertising, and it does not conflict with Minn.Stat. § 336.2–721 (1990). Based on the legislative history, enforcement actions and prior case law, we hold Minn.Stat. § 325F.67 applies to the farmers as purchasers of silos.

The manufacturers also argue Minn.Stat. § 8.31 must be limited to cases where potential damages are nominal. We disagree. Minn.Stat. § 8.31, subd. 3a allows "any person injured" by a violation of Minn.Stat. § 325F.67 to recover attorney fees and costs. The statute's plain language does not limit its application to cases involving nominal damages. *See Kociemba v. G.D. Searle & Co.*, 680 F.Supp. 1293,

---

**1.** In 1941, the statute was changed to Minn.Stat. § 620.52 under the title "Offenses Against Property by Fraud." In 1965, the statute became Minn.Stat. § 362.241 under "Business Development." In 1967, it was renumbered Minn.Stat. § 325.905 under the title "Regulation of Manufacturers and Sales."

1304 (D.Minn.1988) (statute not limited to nominal damages). While we agree the primary purpose of the statute is to encourage lawyers to accept cases where nominal damages erect financial barriers to litigation, we must give effect to the plain meaning of the statute. *See* Minn.Stat. § 645.16 (1990). Any attempt to narrow the application of Minn.Stat. § 8.31, subd. 3a should come from the legislature.

■ The manufacturers further argue the trial court denied them a jury trial on the issue of attorney fees and costs. However, answers to the verdict form demonstrate the jury found the manufacturers made false representations in their publications (a) of an existing material fact, (b) respecting the design of the Harvestore silo, and (c) with the intent of inducing the farmers to purchase five Harvestore silos. Under these facts, the jury determined the facts necessary to support the trial court's conclusion that the manufacturers violated Minn.Stat. § 325F.67.

## II.

■ Absent an abuse of discretion, we will not reverse a trial court's evidentiary rulings. *In re Conservatorship of Torres*, 357 N.W.2d 332, 341 (Minn.1984); *Dallum v. Farmers Union Cent. Exch., Inc.*, 462 N.W.2d 608, 614 (Minn.App.1990), *pet. for rev. denied* (Minn. Jan. 14, 1991).

■ The manufacturers argue the trial court abused its discretion by excluding rebuttal testimony which was critical to the issues of their alleged misrepresentations and possible disregard for the rights of others. They assert (a) the published research reports prepared by the United States Department of Agriculture, (b) their internal digests of these reports, and (c) the testimony of a successful Harvestore owner establish the manufacturers' state of mind regarding the performance and feed storage capabilities of the Harvestore silos. We disagree. First, the trial court properly excluded the evidence as lacking foundation. The manufacturers failed to make an offer of proof linking this proposed evidence to their representations regarding the performance of the silos. There was no evidence offered at trial that the manufacturers read or relied upon published research reports, digests, or favorable comments from other purchasers.

■ Second, the trial court properly excluded the evidence as hearsay. It correctly concluded the reports and digests were not records kept in the regular course of the manufacturers' business. *See* Minn. R.Evid. 803(6). The research reports were prepared by the Department of Agriculture. The manufacturers failed to call a witness qualified to give foundation as to the method of preparation of the reports. *See National Tea Co. v. Tyler Refrigeration Co.*, 339 N.W.2d 59, 61 (Minn. 1983). Even if the digests themselves were business records, the information from the scientific studies would still be inadmissible hearsay. Like medical treatises, these studies are not admissible in evidence to prove the truth of the statements contained in the books because the author is not under oath and not subject to cross-examination. *See Briggs v. Chicago, Great W. Ry. Co.*, 238 Minn. 472, 491, 57 N.W.2d 572, 582 (1953).

■ And third, the trial court properly excluded the rebuttal testimony under the "catchall" exception to the hearsay rule. *See* Minn.R.Evid. 803(24). For hearsay to qualify under this provision, it must be established that there is some need for the evidence and that the evidence has guarantees of trustworthiness equivalent to the specific exceptions set out in Minn. R.Evid. 803. *See Torres*, 357 N.W.2d at 341; *Dallum*, 462 N.W.2d at 614. The statements contained in the scientific reports or digests are not inherently trustworthy. While they most likely report the scientist's findings, these findings are not necessarily accurate, especially in light of the manufacturers' own studies which indicate the opposite results. Under these facts, we cannot say the trial court abused its discretion by excluding the rebuttal evidence.

## III.

■ We review jury instructions to determine whether, taken as a whole, they

are confusing or misleading in presenting the principles of law applicable to the cases. The trial court has broad discretion in choosing the form and language of jury instructions, so long as the entire charge fairly and adequately contains the law applicable to the case. *See Bianchi v. Nordby*, 409 N.W.2d 835, 837 (Minn.1987). A party is entitled to a specific instruction on its theory of the case if there is evidence to support the instruction and it accords with applicable law. *Sandhofer v. Abbott–Northwestern Hosp.*, 283 N.W.2d 362, 367 (Minn.1979).

 The manufacturers concede the trial court correctly used CIVJIG 610 to instruct the jury on the law of intentional misrepresentation. However, they argue the trial court improperly instructed the jury on the law of "indirect representations." We disagree. First, the instruction was based on Restatement (Second) of Torts §§ 533, 534 (1977) and accurately explained the law as stated in *Vikse v. Flaby*, 316 N.W.2d 276, 284 (Minn.1982). *See* Cmt. to CIVJIG 610. Second, the record demonstrates the manufacturers' (a) marketing approach included third-party contact, (b) primary defense was they had no direct contact with the farmers regarding the five purchases, and (c) counsel emphasized this lack of direct representation in both opening statement and closing argument. Under these facts, the instruction is supported by the evidence and accords with applicable law.

### IV.

 The manufacturers argue the trial court abused its discretion by submitting a special verdict which did not separately address each transaction and element of fraud. We disagree. The trial court's special verdict questions fairly and adequately cover all the issues of fact raised in the pleadings and proof. *See Hill v. Okay Constr. Co., Inc.*, 312 Minn. 324, 340, 252 N.W.2d 107, 118 (Minn.1977). While the special verdict does not reveal the jury's specific thought process, it does not require the jury to treat the transactions as one. Absent an abuse of discre-

tion, this court will not reverse a trial court's decision as to a special verdict's form. *See id.* (no requirement that a verdict form list each alleged act of negligence separately); *Rud v. McNamara*, 10 Wis.2d 41, 102 N.W.2d 248, 251 (1960) (no requirement that a verdict form list each element of fraud separately).

 The manufacturers also argue the special verdict form misstated the law because it implied that the statute of limitations did not begin running until the farmers actually discovered the design misrepresentations. We disagree. The trial court adopted the language "respecting the design" to distinguish between misrepresentations which the farmers had disavowed at trial (e.g. increased milk production). The jury instructions accurately reflected the law as stated in *Hydra–Mac v. Onan Corp.*, 450 N.W.2d 913, 918–19 (Minn.1990). Under these facts, we cannot say the trial court abused its discretion in submitting the special verdict form to the jury.

### DECISION

The trial court properly awarded the farmers attorney fees and costs under Minn.Stat. §§ 8.31 and 325F.67. The trial court did not abuse its discretion in its evidentiary rulings or in instructing and submitting this case to the jury.

Affirmed.