COLLOTON, Circuit Judge,
concurring in part, concurring in the judgment in part, and dissenting in part.
I agree with the court’s disposition of Flora’s breach of contract claim, and I concur in the judgment affirming dismissal of the fraud claims against both defendants and the negligent misrepresentation claim against FirePond. I conclude, however, that Flora and Syverson adequately pleaded a claim of negligent misrepresentation against Robertson Stephens under Minnesota law, and I would reverse the judgment of the district court dismissing that claim.
The court concludes that Flora and Sy-verson failed to plead adequately a claim for fraud or negligent misrepresentation, because they could not reasonably have relied upon the alleged misrepresentations upon which the claims are based. ' Ante, at 750. The court reasons that the express language of the lock-up agreement signed by Flora and Syverson is contrary to the alleged misrepresentations, and that any reliance on the alleged misrepresentations was therefore unreasonable. I respectfully disagree with this analysis.
Flora and Syverson alleged that Fire-Pond represented to them that all shareholders, including those holding stock options, must sign the lock-up agreement before the initial public offering of stock would proceed. The lock-up agreement, by contrast, states that Robertson Stephens, as underwriter, may “waive any provision of this Lock-Up agreement without notice to any third party.” These two statements are not antithetical. That every shareholder must sign the lock-up agreement is not inconsistent with the ability of the underwriter to waive a provision of the agreement after a shareholder has signed the agreement.
Stated differently, knowledge that the underwriter may waive the prohibition on selling shares for any shareholder who has signed the lock-up agreement is not the same as knowledge that not every shareholder must sign the lock-up agreement in the first place. ' Once a shareholder signs the agreement, he is at the mercy of the underwriter; the shareholder has no apparent bargaining power that might cause the underwriter to waive the prohibition. But if he knows that the underwriter may proceed with the public offering even though a handful of shareholders has refused to sign the lock-up agreement, then the shareholder may be able to engage in strategic behavior that allows him to remain free of the lock-up agreement without derailing the public offering. Flora and Syverson allege that they lost this opportunity due to misrepresentations, and the waiver provision in the lock-up agreement does not show that reliance on the alleged misrepresentations was unreasonable as a matter of law.
Nonetheless, I concur in the judgment affirming the district court’s dismissal of fraud claims against both FirePond and Robertson Stephens, because I agree with the district court that Flora and Syverson have not stated a claim for fraud with sufficient particularity to survive a motion for judgment on the pleadings. See Fed.R.Civ.P. 9(b). There is no allegation that Robertson Stephens made any false representation directly to Flora and Syverson. It is doubtful that appellants’ general alie- *752 gations that Robertson Stephens made misrepresentations “by and through its agents and employees,” and that Robertson Stephens and FirePond shared information with each other to further the public offering, are sufficient to establish the existence of an agency relationship between Robertson Stephens and FirePond, such that Robertson Stephens could be held liable for alleged fraud by FirePond. See Abels v. Farmers Commodities Corp., 259 F.3d 910, 916-17 (8th Cir.2001); Lachmund v. ADM Investor Servs., Inc., 191 F.3d 777, 783 (7th Cir.1999). Indeed, plaintiffs elsewhere in their compliant allege that Robertson Stephens was the agent of FirePond for purposes of the public offering.[5]
In any event, the complaints also do not contain sufficient allegations of fraud against FirePond. While they assert a misrepresentation by FirePond that all shareholders must sign the lock-up agreement, Flora and Syverson do not allege with particularity how FirePond knew that its representations were false when made. Merely alleging that FirePond employed experienced counsel who “knew or should have known” that fewer than all shareholders would be required to sign the lock-up agreement is not sufficiently particular to state a claim under Rule 9(b). See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-550 (8th Cir.1997); Brown v. N. Cent., F.S., Inc., 987 F.Supp. 1150, 1155-1156 (N.D.Iowa 1997).
I also concur in the judgment affirming the district court’s dismissal of the negligent misrepresentation claim against Fire-Pond. Under Minnesota law, a party owes a legal duty of care in making representations only if it is “engaged in the business or profession of supplying guidance to others.” Safeco Ins. Co. of Am. v. Dain Bosworth, Inc., 531 N.W.2d 867, 871-73 (Minn.Ct.App.1995). In an ordinary arm’s-length relationship between parties to a contract, there is no duty of care that might give rise to a claim for negligent misrepresentation. Id. at 873. Flora and Syverson do not allege that FirePond was in the business of supplying guidance to others. The complaints show that the parties had an ordinary commercial relationship, and that FirePond communicated information to Flora and Syverson in the course of negotiating the lock-up agreements. Under those circumstances, the allegations are not sufficient to support a negligent misrepresentation claim against FirePond.
With respect to the negligent misrepresentation allegations against Robertson Stephens, however, I believe that Flora and Syverson have at least pleaded a sufficient claim under Minnesota law, and I would reverse the judgment dismissing these counts of the complaints. While it is true that Robertson Stephens is not in the business of giving or selling advice directly to individual investors such as Flora and Syverson, the complaints do allege that Robertson Stephens was in the business of underwriting public offerings for clients such as FirePond. Minnesota law recognizes that an underwriter is “generally in the business of supplying information for the guidance of its clients.” Safeco, 531 N.W.2d at 872. The complaints also allege that Robertson Stephens made representa *753 tions to FirePond with the knowledge that FirePond would communicate those representations to shareholders and option-holders whom FirePond approached about the lock-up agreement.
Flora and Syverson contend that through a chain of reliance, Robertson Stephens could be liable to them for making negligent misrepresentations to FirePond, which in turn communicated them to Flora and Syverson. This theory has support in Minnesota law. In Bonhiver v. Graff, 311 Minn. 111, 248 N.W.2d 291 (1976), the Minnesota Supreme Court held that an insurance agent could recover from a negligent accountant based on a “chain of reliance” that involved a communication from the accountant to the state insurance commissioner to the agent. Id. at 302. The court concluded that the agent’s “personal reliance, indirect though it may be through the commissioner, was reasonable ... and sufficient to accord him protection against defendants’ negligence.” Id. at 303.
The Minnesota Supreme Court in Bon-hiver did not venture to say where “the line will eventually be drawn” between those who can recover from a party who makes negligent misrepresentations and those who cannot. Id. The court subsequently recognized, however, that Bonhiver adopted the Restatement (Second) of Torts definition of negligent misrepresentation, Florenzano v. Olson, 387 N.W.2d 168, 174 n. 3 (Minn.1986), and the Restatement provides guidance in drawing the appropriate line. The Restatement defines the “persons for whose guidance the information is supplied,” that is, the persons to whom a negligent defendant may be liable. Restatement § 552(2) & cmt. (h) (1977). According to the Restatement, “it is not necessary that the maker [of the negligent misrepresentation] should have any particular person in mind as the intended, or even the probable, recipient of the information.” Id., cmt. (h). Rather, it is enough that the maker of the representation knows that the recipient “intends to transmit the information” to “a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.” Id.
The Restatement approach has been applied to support a cause of action in situations comparable to that alleged in this case. For example, in Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct. 100, 787 N.E.2d 1060 (2003), investors who had relied on financial statements and SEC filings, which were prepared by an accountant for a company in which the plaintiffs invested, sued the accountant for negligent misrepresentation. Id. at 1062. Even though the Reisman plaintiffs had no direct relationship with the accounting firm, and only received the information through the company in which they were investing, the Massachusetts court held that the action was viable where a jury could infer that the accounting firm knew the investors would rely on its opinions and filings. Id. at 1077. Similarly, in Hosford v. McKissack, 589 So.2d 108, 111 (Miss.1991), the Mississippi Supreme Court applied the Restatement view to hold that home purchasers could bring a negligent misrepresentation claim against a pest control company, even though the plaintiffs received the allegedly negligent inspection report from the seller of the home, because the pest control company should have foreseen that the homeowner’s immediate purchaser would receive and rely on the report. See also, e.g., Marcus Bros. Textiles v. Price Waterhouse, LLP, 350 N.C. 214, 513 S.E.2d 320, 326-27 (1999).
*754 Flora and Syverson alleged that Robertson Stephens made a negligent misrepresentation to FirePond, knowing that FirePond intended to transmit the representation to what the Restatement calls a particular “group or class of persons,” namely, the shareholders and option-holders whom FirePond wished to sign the lock-up agreement. Under Minnesota law, which has adopted the Restatement approach to this tort, I conclude that the allegations are sufficient to survive a motion for judgment on the pleadings.
For the foregoing reasons, I would direct reinstatement of the claims of negligent misrepresentation against Robertson Stephens, but join the court in affirming the judgment as to all other claims.

. Flora and Syverson did not plead a claim of fraud based on a theory of "indirect representations.” See Kronebusch v. MVBA Harvestore System, 488 N.W.2d 490, 496 (Minn.Ct.App.1992); Vikse v. Flaby, 316 N.W.2d 276, 283-84 (Minn.1982). As noted, the complaint alleged an agency theory, that is, that Robertson Stephens made misrepresentations "by and through its agents and employees.” The district court made no mention of a theory of fraud by indirect representations, and appellants' brief on appeal argues only an agency theory without reference to Vikse or Kronebusch.